UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FRUMA RUBIN, on behalf of herself and all other similarly situated consumers, | ) Case No.: 3:16-cv-02167-FLW-LHG<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| vs. | )<br>) |
| J. CREW GROUP, INC., | )<br>)<br>) |
| Defendant. | )<br>) |

_____

**PLAINTIFFS OPPOSITION TO DEFENDANT J. CREW GROUP INC.'S
MOTION TO DISMISS**
_____

**On the Brief:**

Daniel Zemel, Esq.
**Zemel Law, LLC**
70 Clinton Ave. Suite 3
Newark, New Jersey 07114
(T) 862-227-3106
dz@zemellawllc.com
Attorneys for Plaintiff


Fred M. Zemel, Esq.
**The Zemel Law Firm, P.C.**
70 Clinton Ave.
Newark, New Jersey 07114
(T) 973-622-5297
Thezemellawfirm@icloud.com
Attorneys for Plaintiff

**Table of Contents**

INTRODUCTION ................................................................................................ 1

STANDARD OF REVIEW .................................................................................. 3

ARGUMENT ....................................................................................................... 3

POINT A
PLAINTIFF MAINTAINS ARTICLE III STANDING .................................... 3

    I.     Statutory Violations Are Sufficiently Concrete To Establish Article III Standing ........ 4

    II.    Plaintiff's Informational Injury Is Concrete ................................................ 8

       a.   The judgment of the New Jersey Legislature supports holding that Plaintiff's injury is concrete .................................................................................................. 8

       b.   Historically, harms similar to those prevented by the TCCWNA have been found a valid basis for a lawsuit........................................................................... 9

    III.   PLAINTIFF'S INJURY IS PARTICULARIZED ........................................ 12

POINT B
PLAINTIFF MAINTAINS STATUTORY STANDING
AS AN AGGRIEVED CONSUMER .................................................................. 13

    I.     Step 1A: The Ordinary Meaning........................................................... 15

    II.    Step 1B: Related Provisions.................................................................. 17

    III.   Step 2: Assess Clarity of Legislative Intent........................................... 21

    IV.   Step 3: Analyze Legislative Objectives ................................................. 21

    V.    Step 4: Consistency With Public Policy Objective.................................. 22

    VI.   Case Law Supports Plaintiff's Position That The Aggrieved Consumer Need Not Suffer Any Adverse Effect.................................................................................... 22

CONCLUSION.................................................................................................... 26

## Table of Authorities

### Cases

*Arcand v. Brother Int'l Corp.*, 2010 U.S. Dist. LEXIS 103942 (D.N.J. Sept. 29, 2010)............. 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 3

*Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015) ............... 16

*Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347 (D.N.J. 2006)........................ 24

*Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997)........................................................................... 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 3

*Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942 (App.Div. 2007)................................................. 15

*Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414 (11th Cir. July 6, 2016)... 12, 13, 16

*Clark v. Absolute Collection Serv.*, 741 F.3d 487 (4th Cir. 2014)................................................. 10

*Delta Funding Corp. v. Harris*, 189 N.J. 28 (2006) ....................................................... 9

*Dickens v. GC Servs. Ltd. P'ship*, 2016 U.S. Dist. LEXIS 94621 (M.D. Fla. July 20, 2016) ...... 10

*Dugan v. TGI Fridays, Inc.*, 445 N.J. Super. 59 (App. Div. 2016)................................................. 25

*Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998) ................................................... 5, 6, 7, 11

*Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143 (5th Cir. 1983) ................................ 11

*Gomes v. Extra Space Storage, Inc.*, 2015 U.S. Dist. LEXIS 41512 (D.N.J. Mar. 31, 2015).... 3, 4

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). .................................................. 5

*Household Finance Corp. v. Pugh*, 288 N.W.2d 701 (Minn. 1980)............................................. 16

*In re Grand Jury Investigation*, 445 F.3d 266 (3d Cir. 2006) ..................................................... 24

*In re Hulu Privacy Litig.*, 2013 U.S. Dist. LEXIS 179934 (N.D. Cal. Dec. 20, 2013) ............... 16

*In re Nickelodeon Consumer Privacy Litig.*, 2016 U.S. App. LEXIS 11700 (3d Cir. June 27, 2016) ................................................................................................ 7

*Irvine v. I.C. Sys.*, 2016 U.S. Dist. LEXIS 99880 (D. Colo. July 29, 2016)................................ 10

*Johnson v. Wynn's Extended Care, Inc.*, 635 Fed. Appx. 59 (3d Cir. 2015) .................................. 9

*Kaschak v. Raritan Valley Collection Agency*, 1989 U.S. Dist. LEXIS 19103 (D.N.J. May 22, 1989) ...................................................................................................... 12

*Kuhn v. Account Control Technology*, 865 F. Supp. 1443 (D. Nev. 1994) .................................. 25

*Larson v. Trans Union, LLC*, 2016 U.S. Dist. LEXIS 106627 (N.D. Cal. Aug. 11, 2016) .......... 12

*Lozano v. Frank DeLuca Constr.*, 178 N.J. 513 (2004)................................................................ 14

*Lucier v. Williams*, 366 N.J. Super. 485 (App.Div. 2004) ............................................................ 9

*Martinez-Santiago v. Public Storage*, 38 F. Supp. 3d 500 (D.N.J. 2014) ...................................... 9

*McGarvey v. Penske Auto Group, Inc.*, 486 F. App'x 276 (3d Cir. 2012) .................................... 3

*McGarvey v. Penske Auto. Group*, 639 F. Supp. 2d 450 (D.N.J. 2009) ...................................... 23

*Oettinger v. Stevens Commer. Roofing, LLC*, 2013 N.J. Super. Unpub. LEXIS 1854 (App.Div. July 24, 2013)............................................................................................. 15, 20

*Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358 (3d Cir. 1996). ............................................. 14

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)...................................................... 3

*Public Citizen v. Department of Justice*, 491 U.S. 440 (1989)........................................... 5, 6, 11

*Quinn v. Specialized Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 107299 (N.D. Ill. Aug. 11, 2016) ...................................................................................................... 12

*Safdieh v. P & B Capital Grp., LLC*, 2015 U.S. Dist. LEXIS 61680 (D.N.J. May 12, 2015)...... 10

*Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1 (2000)............................................. 7

*Shelton v. Restaurant.com, Inc.*, 70 A.3d 544 (N.J. 2013) ............................................... 14, 22, 24

*Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 896 (3d Cir. 1990) .................................................. 11

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................ 3, 4, 5, 7, 9, 12

*Stair v. Thomas & Cook*, 254 F.R.D. 191 (D.N.J. 2008) ........................................................ 12

*Staub v. Harris*, 626 F.2d 275 (3d Cir. 1980) ............................................................... 16

*Thomas v. FTS USA, LLC*, 312 F.R.D. 407 (E.D. Va. 2016) ........................................... 11, 12, 13

*Tribuzio v. Roder*, 813 A.2d 1210 (App.Div. 2003) .................................................... 14

*United Consumer Financial Services Co. v. Carbo*, 982 A.2d 7 (App.Div.2009) ...................... 24

*United States v. Simonelli*, 614 F. Supp. 2d 241 (D. Conn. 2008) ............................................ 21

*Vallies v. Sky Bank*, 432 F.3d 493 (3d Cir. 2006) ...................................................... 11

*Vaz v. Sweet Ventures, Inc.,* 2011 N.J. Super. Unpub. LEXIS 3189 (Law Div. July 12, 2011)..... 9

*Warth v. Seldin*, 422 U.S. 490 (1975). .................................................................. 4

*Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132 (3d Cir. 2014) .................................... 14

*Wenger v. Bob's Discount Furniture Inc.* No. 14-7707 (D.N.J. Feb. 29, 2016) ....................... 24

*Wilson ex rel. Manzano v. City of Jersey City*, 209 N.J. 558 (2012). .................................. 14

## Statutes

15 U.S.C. § 1601 .................................................................................. 11

15 U.S.C. § 1681 .................................................................................. 11

15 U.S.C. § 1692 .................................................................................. 11

42 U.S.C. § 3604 ................................................................................... 5

42 U.S.C. § 3612 ................................................................................... 5

N.J.S.A. § 56:12-15 ............................................................................ 1, 17

N.J.S.A. § 56:12-16 ............................................................................ 1, 17

N.J.S.A. § 56:12-17 ......................................................................... 13, 18, 20

N.J.S.A. § 56:12-18.................................................................................................... 18

N.J.S.A. § 12A:1-201................................................................................................. 16

N.J.S.A. § 2A:156...................................................................................................... 15

N.J.S.A. § 56:8-159................................................................................................... 15

**INTRODUCTION**

Fruma Rubin ("Plaintiff") brings this case against J. Crew Group Inc. ("Defendant") seeking to enforce her rights under the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to 18 ("TCCWNA"). The TCCWNA has two essential provisions. N.J.S.A. § 56:12-15 ("Section 15") prohibits Sellers from placing unenforceable or illegal provisions within contracts, notices, or signs displayed to a consumer or prospective consumer. N.J.S.A. § 56:12-16 ("Section 16") places a disclosure requirement upon Sellers: in the event a Seller states that certain of its provisions may not be enforceable in "some jurisdictions," the Seller must then disclose whether those provisions are enforceable in New Jersey.

The New Jersey Legislature specifically codified the TCCWNA to prevent Sellers and Lessors from providing consumers with illegal, unenforceable, or ambiguous provisions which often deceive consumers with regard to their rights. The Legislature was specifically concerned with Sellers stating they were not responsible for any damages caused to a consumer regardless of whether the damages were the result of the Seller's actions, as well as indemnification and hold-harmless clauses that mislead the consumer into believing that the Seller is free from all liability. Defendant, in the terms and conditions it provided to Plaintiff, provides the exact type of provisions that the TCCWNA was codified to protect against.

Defendant's terms and conditions constitute a consumer contract. Defendant's terms clearly state: "these terms and conditions (the "Terms") govern your use of the J.Crew Website and J.Crew's services, applications, content and products (collectively, the "Site"). Please read these Terms carefully because your use of the Site constitutes your agreement to follow and be bound by these Terms."

1

Despite the clear guidance from the New Jersey Legislature, Defendant's terms and conditions explicitly state that it will not be liable for damages suffered by plaintiff, no matter the cause.

> "IN NO EVENT SHALL J.CREW… BE LIABLE TO YOU FOR ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES, LOSSES OR CAUSES OF ACTION (WHETHER IN CONTRACT OR TORT, INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE OR OTHERWISE) ARISING FROM OR IN ANY WAY RELATED TO THE USE OF… THE SITE OR THE CONTENT AND MATERIALS… EVEN IF J.CREW OR ITS REPRESENTATIVE OR SUCH INDIVIDUAL HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES."

Further, Defendant's indemnification provides the exact provisions which the TCCWNA was enacted to prevent. "You agree to defend, indemnify and hold J.Crew, its directors, officers, employees, agents and affiliates harmless from any and all claims, liabilities, damages…" Finally, Defendant's ambiguous language concerning its liability, without disclosing the effect on New Jersey residents is a verbatim violation of Section 16. "SOME JURISDICTIONS DO NOT ALLOW THIS LIMITATION OR EXCLUSION OF LIABILITY, SO SOME OF THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU." Nonetheless, Defendant moves to dismiss the complaint for lack of Article III and statutory standing.

Plaintiff demonstrates herein that these arguments fail. Plaintiff maintains Article III standing given that Defendant's contractual provisions impose a real risk of harm upon Plaintiff—the very harm which the TCCWNA was codified to prevent.  Further, the plain language of the TCCWNA, and case law dealing with the precise issues now before this Court identify Defendant's TCCWNA violations and demonstrate that Defendant's motion should be denied.

**STANDARD OF REVIEW**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), courts ask whether a complaint alleges subject matter jurisdiction. Fed. R. Civ. P.12(b)(1). At issue here is whether the Complaint alleges standing.

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts ask whether a complaint satisfies Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), courts first separate the factual and legal elements of the claim, accepting facts and disregarding legal conclusions. *Iqbal*, 556 U.S. at 678. Here, facts are viewed in the light most favorable to the plaintiff. *McGarvey v. Penske Auto Group, Inc*., 486 F. App'x 276, 279 (3d Cir. 2012) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). Courts then determine whether the well-pled facts sufficiently set forth "a plausible claim for relief." *Gomes v. Extra Space Storage, Inc*., 2015 U.S. Dist. LEXIS 41512, *12 (D.N.J. Mar. 31, 2015).

**ARGUMENT**

POINT A
PLAINTIFF MAINTAINS ARTICLE III STANDING

The elements of standing under Article III are well-established. As the Supreme Court clarified in *Spokeo*, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To constitute an injury in fact, an injury must be "concrete and particularized."  *Id.* at 1548. While the

violation of a statute itself is not sufficient to confer Article III standing, the "risk of real harm" is sufficient to establish Article III standing. *Id*. at 1549. Thus, "standing…may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing. *Gomes*, 2015 U.S. Dist. LEXIS 41512, *16 (D.N.J. Mar. 31, 2015) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Defendant challenges only the first prong, injury-in-fact. Because Plaintiff has been subject to Defendant's false and deceptive misrepresentations and because Defendant has failed to provide the requisite disclosures, in violation of the TCCWNA, Plaintiff has established Article III standing.

I.  Statutory Violations Are Sufficiently Concrete To Establish Article III Standing

The most recent Supreme Court decision addressing Article III standing makes clear that Plaintiff has standing. In *Spokeo*, the Court addressed whether a violation of a statutes procedural requirement is sufficiently concrete under Article III standing requirements. *Spokeo,* 136 S. Ct. at 1549. There, the plaintiff brought suit alleging defendant violated a statute requiring certain procedures designed to decrease the risk of dissemination of false information. *Id.* The Court confirmed that intangible injuries, including informational injury, are sufficiently "concrete" where the harm is invasion of a legally protected interest. *Id.* at 1553.

In evaluating whether an intangible injury satisfies the "concreteness" requirement, the *Spokeo* Court offered two important considerations: (1) history—whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" and (2) the judgment of Congress—reliance on the Legislature's ability to identify intangible harms and elevate these harms to a legally cognizable status. *Id.* at 1549.

4

The *Spokeo* Court referenced examples of intangible injuries, in the form of informational injury, where Article III standing requirements were established. Specifically, the Court referenced its prior opinions in *Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989). *Id.* The Supreme Court decision in *Havens Realty Corp. v. Coleman* provides even further support for the existence of Plaintiff's standing in this case. *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

In *Havens*, two individuals brought claims under the Fair Housing Act ("FHA") pursuant to their role as "testers." *Id.* at 372. Section 804(d) of the FHA prohibits representing "to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available. 42 U.S.C. § 3604(d). The FHA permits persons to bring a private cause of action under the FHA. 42 U.S.C. § 3612(a). The plaintiffs in *Havens* called two apartment complexes as testers and asked about the availability of apartments. 455 U.S. at 374-75. Coleman, the tester who was black, was informed that there were no apartments; whereas Willis, the tester who was white, was informed that there were vacancies. *Id.* The Supreme Court concluded that Coleman had standing to bring claims under the FHA for the false representations that were made, but Willis did not because each time he was told that apartments were available and thus was subject to no misrepresentation by the apartment complex. *Id.* In concluding that standing existed, the Supreme Court found that the right to truthful information regarding housing availability is the type of congressional provision manifesting congressional intent to confer standing. *Id.* at 373-74. The Court went on to state: "A tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." *Id.* The Court rejected the

argument that standing did not exist because the tester was not actually looking to purchase a home or that the tester was expecting to receive misinformation because it did not negate the injury suffered under the statute.  *Id.* at 374.  Therefore, the injury to a "statutorily created right to truthful housing information" satisfied the Article III requirement of injury in fact.  *Id.*

In *Public Citizen v. Department of Justice*, plaintiffs brought suit under the Federal Advisory Committee Act ("FACA"), which provides that committee minutes, records, and reports be made available to the public absent the applicability of an exemption found in the statute, seeking to get minutes of the meetings of the American Bar Associate committee meetings where judicial candidates are considered and assigned ratings with respect to their qualifications. 491 U.S. 440 (1989) at 444-47.   The Supreme Court found the plaintiffs had Article III standing because "refusal to permit applicants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id.* at 449.  As long as the plaintiffs could show they requested information and were denied specific records, the plaintiffs had Article III standing and since the plaintiffs made the requisite showing, there was standing.  *Id.*

In *Federal Election Comm'n v. Akins*, a group of voters sued the Federal Election Commission ("FEC") when the FEC refused to treat the American Israel Public Affairs Committee ("AIPAC") as a "political committee" which would subject to AIPAC to recordkeeping and disclosure requirements. 524 U.S. 11, 14-18 (1998).  The FEC challenged the voters' standing to bring suit, but the Supreme Court rejected the challenge. *Id.* at 20.  The Court explained as follows: "The 'injury in fact' that respondents have suffered consists of their inability to obtain information – lists of AIPAC donors . . . and campaign-related contributions and expenditures – that on respondents' view of the law, the statute requires that AIPAC make

6

public." *Id.* at 21. Since this information if disclosed would help the voters better evaluate candidates for office, the Supreme Court found the informational injury to be concrete and particular. *Id.*

The Supreme Court's decision in *Spokeo* casts no doubt on the continued viability of the decisions in *Havens*, *Public Citizen*, and *Akins.* The majority opinion in *Spokeo* specifically cites to *Public Citizen* and *Akins* as cases exemplifying when Congress has granted a right by statute sufficient to constitute standing without any additional harm. *Id.* Justice Thomas's concurrence and Justice Ginsburg's dissent both cite to the decision in *Havens* approvingly with neither opinion expressing any concern that the majority's opinion has any impact on *Havens* continuing to operate as precedential law moving forward. *See id.* at 649-50, (Thomas. J., concurring) (*citing Havens* for proposition that "a plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right; *see also id.* at 651 (Ginsburg, J., dissenting) (*citing Havens* as identifying truthful information regarding the availability of housing as a sufficient Article III injury).  It is well established that the Supreme Court does not overrule or dramatically limit prior precedents *sub silentio*, which would be the only way that *Spokeo* could have undermined the earlier ruling in *Havens*. *See e.g.*, *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000).  Thus, informational injuries such as misrepresentation and the failure to provide legally required disclosures, are clearly sufficient to maintain Article III standing.

The Third Circuit has also addressed informational injury, post-*Spokeo*. In *In re Nickelodeon Consumer Privacy Litig.*, 2016 U.S. App. LEXIS 11700 (3d Cir. June 27, 2016) the defendants unlawfully disclosed information protected under the Video Privacy Protection Act. *Id.* at *3-4. Noting that intangible harms such as "unlawful denial of access to information

subject to disclosure" and unlawful disclosure of legally protected information *does* constitute injury, the Third Circuit held that the plaintiff maintained Article III standing given that informational injury has traditionally been regarded a basis for lawsuit and the judgment of Congress has elevated the legal status of certain types of information to cognizable injury.  *Id.* at *23.

## II.   Plaintiff's Informational Injury Is Concrete

### a.   The judgment of the New Jersey Legislature supports holding that Plaintiff's injury is concrete

The drafting of the TCCWNA and the reasoning behind its codification clearly present the judgment of the New Jersey Legislature in providing a private cause of action against TCCWNA violators. Given the deceptive placement by Sellers of unenforceable or ambiguous provisions within consumer contracts, the New Jersey Legislature believed that the only effective way in which to prevent the dissemination of false or ambiguous information to consumers would be through legislation. Sponsors' Statement, Statement to Assembly Bill No. 1660 (May 1, 1980) ("Sponsors' Statement"), attached as Exhibit A. Indeed, the placement within consumer contracts of invalid, unenforceable, and ambiguous provisions creates a risk of real harm because consumers are likely to believe that such provisions validly limit the consumer's rights, and thereafter refrain from bringing an otherwise actionable claim. *Id.* Considering the magnitude of the risk and the ease with which a Seller may violate the TCCWNA's provisions, the New Jersey Legislature established a cause of action under the TCCWNA, even where the consumer has suffered no harm or negative effect from its violation.

In this case, Defendant's terms and conditions contain a verbatim violation of Section 16, and there is a myriad of case law establishing that the Defendant's over broad liability waivers

are unenforceable. *See Martinez-Santiago v. Public Storage*, 38 F. Supp. 3d 500, 512 (D.N.J. 2014) (Showing Defendant's exculpatory clause violates clearly established rights); *Delta Funding Corp. v. Harris*, 189 N.J. 28 (2006) (Defendant's indemnification clause illegally limits Plaintiff's rights to attorney's fees); *Johnson v. Wynn's Extended Care, Inc*., 635 Fed. Appx. 59, 61 (3d Cir. 2015) (Same); (*Vaz v. Sweet Ventures, Inc.,* 2011 N.J. Super. Unpub. LEXIS 3189, *1 (Law Div. July 12, 2011) (Defendant's limitation on damages violates Plaintiff's rights) . Given that Defendant's terms contain a number of provisions which are clearly unenforceable, there is a real risk of harm that consumers will believe these provisions are enforceable, and subsequently refrain from enforcing their rights under the belief it would be a fruitless effort. Thus, the judgment of the New Jersey Legislature in protecting such individuals is instructive to the conclusion that Plaintiff has suffered a concrete injury.

> b. Historically, harms similar to those prevented by the TCCWNA have been found a valid basis for a lawsuit

In addition to the judgment of the Legislature, the Supreme Court's concreteness determination also finds it "instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) The TCCWNA's "close relationship" to other informational harms support the conclusion that Plaintiff's injury was concrete.

Common law has established that informational harms similar to violations of Section 15 have provided a basis for a lawsuit. Section 15 essentially provides a right to consumers to receive truthful information as opposed to deception and misrepresentations in the form of illegal or unenforceable terms. In *Havens Realty* the defendant refused to provide truthful information to the plaintiff concerning the availability of housing. *Havens Realty Corp. v. Coleman* 455 U.S.

363, 374 (1982). There, the Court found Plaintiff's injury sufficiently concrete given that the

defendant deceptively provided false information concerning housing availability. *Id.* Similarly,

in *Safdieh v. P & B Capital Grp., LLC*, 2015 U.S. Dist. LEXIS 61680, (D.N.J. May 12, 2015),

the defendant's collection letter provided false information to the consumer concerning his rights

by stating that the defendant would charge interest or late fees on the debt accrued, when in fact,

it could not. There, the Court held that the placement of false and unenforceable information

within the collection letter presented an informational injury. *Id.* at *13. *See also Clark v.

Absolute Collection Serv.*, 741 F.3d 487, 491 (4th Cir. 2014) (providing plaintiff with false

information as to the consumers rights concerning the method required in order to dispute the

debt violated the Fair Debt Collection Practices Act). Thus, providing false and deceptive

information to consumers, much like that which the TCCWNA prevents, has historically been

found to provide a basis for a lawsuit.

A number of post-*Spokeo* decisions also support the proposition that failing to provide

consumers with truthful and accurate information presents concrete injury. *See Irvine v. I.C. Sys.*,

2016 U.S. Dist. LEXIS 99880, *6 (D. Colo. July 29, 2016) (plaintiff adequately established a

concrete injury under the Fair Credit Reporting Act after defendant presented false and deceptive

information concerning plaintiff to the credit bureaus); *Dickens v. GC Servs. Ltd. P'ship*, 2016

U.S. Dist. LEXIS 94621 (M.D. Fla. July 20, 2016) (plaintiff's injury sufficiently concrete where

debt collector misinformed plaintiff as to his rights).

In sum, Section 15 prevents the placement of provisions which are illegal or

unenforceable given that they mislead the consumer. Considering that the TCCWNA has a close

relationship to other cases which have found the failure to provide truthful information or the

dissemination of illegal or unenforceable terms to provide a basis for a lawsuit, Plaintiff's informational injury here is sufficiently concrete to maintain Article III standing.

Common law has also established that informational harms similar to violations of Section 16 have provided a basis for a lawsuit. Section 16 is essentially a disclosure requirement. In the event a Seller provides that "any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey" they are required to disclose how such provisions will impact New Jersey consumers. Both the *Public Citizen* and *Akins* decisions address instances where the failure to provide required disclosures were found concrete and actionable. *Public Citizen v. Department of Justice*, 491 U.S. 440, 444-47 (1989) (holding denial of information required to be disclosed by FACA actionable); *Federal Election Comm'n v. Akins*, 524 U.S. 11, 14-18 (1998) (finding FEC failure to disclose information on AIPAC concrete and actionable informational injury).

Even further, there are many statutes including the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., ("FDCPA"), Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., ("FCRA") and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*., ("TILA") which impose disclosure requirements much like the TCCWNA, the failure of which to provide said disclosures have been a basis for a lawsuit. *See generally Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 150 (5th Cir. 1983) (holding failure to provide required disclosure under FCRA actionable); *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 413 (E.D. Va. 2016) (same); *Vallies v. Sky Bank*, 432 F.3d 493, 496 (3d Cir. 2006) (failure to provide TILA disclosure actionable) *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 896, 901 (3d Cir. 1990) (providing inaccurate TILA disclosure actionable); *Stair v. Thomas & Cook*, 254 F.R.D. 191, 195 (D.N.J.

2008) (failure to provide FDCPA disclosure actionable).; *Kaschak v. Raritan Valley Collection Agency*, 1989 U.S. Dist. LEXIS 19103, *20 (D.N.J. May 22, 1989) (same). Thus, given that the failure to provide required disclosures has historically been found to provide a basis for a lawsuit, history supports the conclusion that Plaintiff's injury is concrete.

A number of post-*Spokeo* decisions make clear that Defendant's failure to provide required disclosures, much like the requirements imposed by Section 16, present a concrete injury. *See generally Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414, *9 (11th Cir. July 6, 2016) (failure to disclose information required by FDCPA sufficiently concrete); *Quinn v. Specialized Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 107299, *12 (N.D. Ill. Aug. 11, 2016) (Same); *Thomas v. FTS USA, LLC*,  2016 U.S. Dist. LEXIS 85545*8 n.3 (E.D. Va. June 30, 2016) (failure to disclose information required by FCRA sufficiently concrete ); *Larson v. Trans Union, LLC*, 2016 U.S. Dist. LEXIS 106627, *13 (N.D. Cal. Aug. 11, 2016) (same).

In sum, Section 16 places a disclosure requirement upon Sellers much like other statutes. Considering that the TCCWNA has a close relationship to other cases which have found the failure to disclose required information sufficient to provide a basis for a lawsuit, Plaintiff's informational injury is sufficiently concrete to maintain Article III standing.

III.   PLAINTIFF'S INJURY IS PARTICULARIZED

An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). However, "the fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance," as long as each individual suffers a particularized harm. *Id.* at n.7. By violating the statutory rights of an individual consumer, the particularization element is met. *See*

*id.*at 1548; *Church*, 2016 U.S. App. LEXIS 12414, \*9-11 (11th Cir. July 6, 2016); *Thomas*, 2016 U.S. Dist. LEXIS 85545\*24 (E.D. Va. June 30, 2016).

In this case, Defendant violated Plaintiff's rights in a personal and individual way. Plaintiff does not allege a general grievance to the community at large. Rather, she alleges that the placement of unenforceable provisions, and the failure to disclose how Defendant's generalized disclaimer applies specifically to her, violates the TCCWNA. Defendant cannot dispute that Plaintiff's personal interests were affected by Defendant's violations because Plaintiff has personally entered into a consumer contract with Defendant—the contract is not made between any party other than Plaintiff and Defendant. While it is true that Defendant has violated the rights of other New Jersey consumers with whom it has entered into separate contracts, Plaintiff's grievance is unique to her—the contract between Plaintiff and Defendant violated her rights. Thus, Plaintiff's claims are sufficiently particular as they directly affect her individual rights.

POINT B
PLAINTIFF MAINTAINS STATUTORY STANDING
AS AN AGGRIEVED CONSUMER

In its motion to dismiss, Defendant attempts to insert a damage requirement under the guise of the "aggrieved consumer," despite the clear language of N.J.S.A. § 56:12-17 ("Section 17") that Plaintiff need not allege any actual damages. By applying the cannons of statutory interpretation to the TCCWNA, and reviewing established case law, it is clear that a consumer becomes an "aggrieved consumer" once the consumer is presented with terms which violate Section 15 or Section 16. Considering Plaintiff has been subject to Defendant's illegal provisions, Plaintiff is an "aggrieved consumer."

13

The term "aggrieved" is not defined in the TCCWNA; thus, a statutory analysis is required. As a Federal Court sitting in diversity, this statutory analysis requires the Court to predict how the New Jersey Supreme Court would resolve the issue. *Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132, 135 (3d Cir. 2014) (citing *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373 n.15 (3d Cir. 1996). Employing New Jersey's cannons of statutory construction requires a four step analysis. First, ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole. *Shelton v. Restaurant.com*, *Inc*., 214 N.J. 419, 429 (2013) (quoting *DiProspero v. Penn*, 183 N.J. 477, 492 (2005); *Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132, 135 (3d Cir. 2014). Second, determine if the Legislature's intent is clear from the statutory language and its context with related provisions; if so, the law is applied as written. *Lozano v. Frank DeLuca Constr.*, 178 N.J. 513, 522 (2004). Third, if the Legislature's intent is not clear, further guidance is provided by analyzing the legislative objectives sought to be achieved by the statute. *Wilson ex rel. Manzano v. City of Jersey City*, 209 N.J. 558, 572 (2012). Fourth, review the plain language established and ensure it does not lead to a result inconsistent with any legitimate public policy objective, or against a general statutory scheme.  *Id.*; *DiProspero*, 183 N.J. at 492-93; *Shelton*, 214 N.J. at 429.

In conducting the statutory analysis, the New Jersey Supreme Court has stated that the "TCCWNA is a remedial statute, entitled to a broad interpretation." *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 558 (N.J. 2013).  Under New Jersey law, "Remedial statutes should be construed liberally, giving their terms the most extensive meaning of which they are reasonably susceptible." *Tribuzio v. Roder*, 813 A.2d 1210, 1214 (App.Div. 2003).  An interpretation of a remedial statute which narrows the scope of the statute and reduces the universe of persons

14

entitled to relief, is disfavored. *Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942, 948 (App.Div. 2007). While enacting the TCCWNA, its very purpose was to address the frequent placement of illegal or unenforceable provisions within consumer contracts, in order to prevent their placement in said contracts altogether. The Act was not codified merely to compensate consumers that had been negatively affected by such provisions, but to act as a deterrent, as any other remedial statute. That the Legislature's purpose was one of prevention, as opposed to one of remediation, makes clear that the term "aggrieved consumer" cannot have been to require the consumer to have suffered an adverse effect, as Defendant contends.

I.    Step 1A: The Ordinary Meaning

The ordinary meaning of an "aggrieved consumer" is straightforward: a consumer whose rights have been violated and is therefore entitled to a remedy.  In *Oettinger v. Stevens Commer. Roofing, LLC*, 2013 N.J. Super. Unpub. LEXIS 1854, *6, (App.Div. July 24, 2013) the New Jersey Appellate Division grappled with interpretation of the term "aggrieved" under New Jersey's Junk Fax statute, N.J.S.A. § 56:8-159(a). The Junk Fax statute provides for relief to "a person…aggrieved by a violation," of the Act. *Id*. In addressing whether the term "aggrieved" means that a claimant is required to show an adverse effect, as Defendant argues for in this case, the Appellate Division reviewed the legislative history and purpose of the statute, ultimately holding that the Legislature did not intend to create an additional injury requirement through the term "aggrieved;" rather, interpreting "aggrieved" to mean a consumer whose rights were violated, and who is therefore entitled to a remedy. *Id.* at *7.

Other New Jersey statutes provide further guidance on the ordinary definition of an "aggrieved consumer." *See* New Jersey Wiretapping Act, N.J.S.A. § 2A:156A-1, *et seq.*,

(defining "aggrieved person" as "a person who was a party to any intercepted wire, electronic or oral communication or a person against whom the interception was directed" (N.J.S.A. § 2A:156A-2k)), and providing a right of action to such persons for minimum statutory damages even in the absence of actual harm.  (N.J.S.A. § 2A:156A-24; N.J.S.A. 2A:156A-32)); and the New Jersey Uniform Commercial Code ("NJUCC"), N.J.S.A. § 12A:1-201 (defining "aggrieved party" simply as "a party entitled to resort to a remedy.").

Case law addressing other statutory violations provides further support that the ordinary meaning of "aggrieved" simply refers to a violation of a consumer's rights, thereby entitling him or her to a remedy. In *In re Hulu Privacy Litig*., 2013 U.S. Dist. LEXIS 179934 (N.D. Cal. Dec. 20, 2013), the plaintiff brought suit under the Video Protection Privacy Act which provides similar language and remedies as the TCCWNA: "Any person aggrieved by any act of a person in violation of this section" may bring a civil action for actual or statutory damages. There, the defendant requested that the court interpret the term "aggrieved" to input an actual injury requirement, greater than the statutory injury alone. *Id.* at *16-18. Ultimately the court clarified that the plain language of the term "aggrieved party" simply referred to a party who failed to receive the required disclosure, without more. *Id.*; *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 666 (S.D.N.Y. 2015) (same); *See also Staub v. Harris*, 626 F.2d 275, 277 (3d Cir. 1980) (holding a debtor subject to any statutory violation of FDCPA, even without an adverse effect, considered an "aggrieved consumer"); *Church v. Accretive Health, Inc*., 2016 U.S. App. LEXIS 12414, *9 (11th Cir. Ala. July 6, 2016) (plaintiff considered "aggrieved debtor" merely after failure to receive required FDCPA disclosure); *Household Finance Corp. v. Pugh*, 288 N.W.2d 701, 705, fn. 7 (Minn. 1980) (considering plaintiff  an "aggrieved consumer" after failure to receive required TILA disclosures, immediately after the contract is

consummated, regardless of any adverse effect). Thus, it is clear that the ordinary meaning of an

"aggrieved consumer" is one whose rights have been violated and is therefore entitled to a

remedy.

## II.    Step 1B: Related Provisions

Next, statutory interpretation requires the Court take the ordinary definition and read it

within the context of related provisions. Reading the statutory words in the context of related

provisions provides clarity on Plaintiff's status as an "aggrieved consumer." As for related

provisions, the entirety of the TCCWNA states as follows:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to
> any consumer or prospective consumer or enter into any written consumer contract or
> give or display any written consumer warranty, notice or sign after the effective date
> of this act which includes any provision that violates any clearly established legal
> right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as
> established by State or Federal law at the time the offer is made or the consumer
> contract is signed or the warranty, notice or sign is given or displayed. Consumer
> means any individual who buys, leases, borrows, or bails any money, property or
> service which is primarily for personal, family or household purposes.

> N.J.S.A. § 56:12-15

> No consumer contract, warranty, notice or sign, as provided for in this act, shall
> contain any provision by which the consumer waives his rights under this act. Any
> such provision shall be null and void. No consumer contract, notice or sign shall state
> that any of its provisions is or may be void, unenforceable or inapplicable in some
> jurisdictions without specifying which provisions are or are not void, unenforceable
> or inapplicable within the State of New Jersey; provided, however, that this shall not
> apply to warranties.

> N.J.S.A. § 56:12-16

> Any person who violates the provisions of this act shall be liable to the aggrieved
> consumer for a civil penalty of not less than $100.00 or for actual damages, or both at
> the election of the consumer, together with reasonable attorney's fees and court costs.
> This may be recoverable by the consumer in a civil action in a court of competent

jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him. A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract.

N.J.S.A. § 56:12-17

The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State, and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition.

N.J.S.A. § 56:12-18

The very first provision of the TCCWNA provides clarity to this analysis given its focus on the Sellers conduct as opposed to the conduct or injury of the consumer. Section 15 states no Seller "shall offer to any consumer or prospective consumer," a contract, notice or sign, which contains provisions that violate the consumers clearly established rights. First, by specifically stating that a Seller cannot "offer" such a contract, notice or sign, without requiring the acceptance of said offer, Section 15 makes clear that no adverse effect is required. After all, how can a consumer suffer any adverse effect merely from receiving an offer without acceptance of the offer's terms? Yet that is what the statute explicitly states. Second, by clearly listing the term "prospective consumer" as a consumer protected by the TCCWNA, the term "aggrieved consumer" cannot require an adverse effect. After all, how can the Act protect a "prospective consumer" from the placement of an unenforceable provision, if the acts policing requirement, Section 17, requires actual harm (as opposed to mere informational injury)? Of course the "prospective consumer" cannot have suffered any injury given the fact that they have not purchased anything. Third, how can one suffer an injury merely from reviewing a displayed

"notice or sign" containing unenforceable provisions? Yet, the statute explicitly protects consumers from such a display.

Taking the ordinary definition of an "aggrieved consumer"—a consumer whose rights have been violated, and is entitled to a remedy—within the context of related provision Section 15 which specifically utilizes the terms "offer," "prospective consumer" and "notice or sign," makes clear that a consumer becomes an "aggrieved consumer" the instant they are offered a contract, or receive a displayed notice or sign which violates their consumer rights, without more. Had the legislature intended otherwise, it would not have specified non-consumated transactions specifically as protected classes.

Applying the ordinary definition of an "aggrieved consumer" within the context of Section 16 provides the same result. Section 16 specifically states that no contract, notice or sign shall contain ambiguous language stating that some provisions may be void or unenforceable in some jurisdiction without specifying how it relates to New Jersey consumers. Notably, the statute does not require for any provision to in fact be unenforceable or void as to New Jersey consumers; mere failure to place such information within the contract, notice, or sign, is enough. How can the failure to disclose the effect of an ambiguous disclaimer on New Jersey residents possibly result in any form of harm or damages? Even more so, how can the failure to disclose result in harm where New Jersey's laws do not invalidate or render any other provisions void? It cannot. By placing an adverse effect requirement through the term "aggrieved consumer" Defendant is essentially attempting to nullify Section 16 in its entirety; an argument which should not be entertained by the Court. Thus, applying the ordinary definition of  "aggrieved consumer" within the context of related provision Section 16 makes clear that the term

"aggrieved consumer" merely refers to a consumer who has received or viewed a contract, notice or sign, which violates Section 16, without having suffered any adverse effect.

Applying the ordinary definition of an "aggrieved consumer" within the context of Section 17 provides the same result. Here, the Appellate Division's analysis in *Oettinger v. Stevens Commer. Roofing, LLC*, 2013 N.J. Super. Unpub. LEXIS 1854 (App.Div. July 24, 2013) concerning New Jersey's junk fax statute is instructive. In order to establish that the term "aggrieved" did not impose a damage requirement the Court reviewed the legislative history and purpose of the statute, focusing primarily on the Sponsor's Statement: "A person violating the provisions of this bill would be subject to a penalty of not more than $500 per occurrence **_or_** the actual damages caused by the violation." *Id.* at *7-8 (emphasis added). Focusing on the fact that the Legislature's statement provided either statutory damages **_or_** actual damages, the Appellate Division found that the Legislature was clearly motivated by an objective to create a deterrent for those who would send unsolicited faxes, not just a desire to make victims of the practice whole. *Id.* As such, the term "aggrieved" could not be interpreted as an actual injury requirement.

The same analysis should be applied to the instant case. Here, Section 17 clearly provides "for a civil penalty of not less than $100.00 **_or_** for actual damages." N.J.S.A. § 56:12-17. By using the disjunctive "or," "$100.00 **_or_** actual damages" the Legislature clearly signaled that the civil penalty is available whether or not the consumer suffered any actual damages which would result from an adverse effect. This is because the TCCWNA was established to deter rather than to compensate consumers. *Sponsor's Statement*. Even further, "a penalty is '[p]unishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine; esp[ecially], a sum of money exacted as a punishment for either a wrong to the state or a civil wrong (**as distinguished from compensation for the injured party's loss**).'" *United States v. Simonelli*, 614 F. Supp. 2d

20

241, 244 (D. Conn. 2008)(citing Black's Law Dictionary (8th ed. 2004)(emphasis added).   By using the term "penalty," the Legislature clearly signaled that the remedy had nothing to do with the effect of the violation of the consumer, and was concerned solely with punishing the violator so as to deter future violations.  This is clearly inconsistent with the "adverse effect" standing requirement suggested by the Defendant here.  Thus, applying the ordinary definition of "aggrieved consumer" within the context of related provision Section 17, makes clear that there is no adverse effect requirement.

III.    Step 2: Assess Clarity of Legislative Intent

Viewing the statutory language within the context of Sections 15-17, provides clarity to the Legislature's intent. The plain language of the term "aggrieved consumer" itself suggests that the Legislature intended to provide a remedy to a plaintiff whose TCCWNA rights were violated, without any required adverse effect. Further, taking the ordinary definition of "aggrieved consumer" within the context of the TCCWNA's provisions which explicitly provides protections in instances where there cannot be any damages, it is clear that the Legislature did not intend to impose a damage requirement. Thus, the law should be applied as written.

IV.    Step 3: Analyze Legislative Objectives

Even further guidance is provided by analyzing the objective the Legislature sought to achieve with the TCCWNA. The legislative purpose behind the TCCWNA is remarkably clear from the Sponsor's Statement. Its purpose is to *prevent* placement of unenforceable or ambiguous provisions within contracts, notices, or signs which may cause confusion to a consumer as to his or her rights. *Sponsor's Statement*. In fact, the Sponsor's Statement explicitly states: "This bill prohibits businesses from **offering _or_ using** provisions…that violate" clearly

established rights. *Sponsor's Statement*. This statement necessarily provides two objectives of the statute: 1) prevent the **use** of unenforceable or ambiguous provisions against consumers—which necessarily results in harm or an adverse effect, and 2) prevent the **offering** of such terms—which necessarily does not result in harm because mere offering without use of such provisions against the consumer cannot have *any* adverse effect. Thus, the objectives of the statute specifically meant to include a class of consumers that have not suffered any adverse effect by terms which violate the TCCWNA, and therefore, the "aggrieved consumer" cannot be defined to impose an adverse effect requirement.

V.     Step 4: Consistency With Public Policy Objective

Finally, by applying the plain language herein established, that the "aggrieved consumer" serves to protect consumers merely whose rights have been violated, without more, is not inconsistent with any legitimate public policy objective, or against a general statutory scheme. In fact, such an interpretation is exactly consistent with the very public policy objective of the statute. Thus, the Court need go no further in its analysis, and Plaintiff maintains statutory standing as an "aggrieved consumer."

VI.     Case Law Supports Plaintiff's Position That The Aggrieved Consumer Need Not Suffer Any Adverse Effect

In addition to the above statutory analysis, there is ample case law upholding TCCWNA claims for statutory penalties in the absence of any "adverse effect."   In *Shelton v. Restaurant.com Inc.*, 543 Fed. Appx. 168 (3d Cir. N.J. 2013) the plaintiff purchased a gift certificate from defendant with a twelve month expiration date, thereby violating N.J.S.A. § 56:8-110 which prohibits gift certificate expiration in less than a twenty-four month period.

22

There, the plaintiff could not identify any ascertainable loss from the violation, thus the plaintiff could not establish her burden under the New Jersey Consumer Fraud Act which requires ascertainable loss. *Id.* at 170. However, even though the plaintiff could not establish any ascertainable loss, the Third Circuit reversed dismissal of the TCCWNA claims by the District Court, given that the plaintiff's clearly established rights were violated by the defendant's provisions. *Id.* at 170-171.

In *Posey v. NJR Clean Energy Ventures Corp.*, 2015 U.S. Dist. LEXIS 146688 (D.N.J. Oct. 29, 2015) (J. Wolfson), this Court recently upheld TCCWNA claims based on violations of the formal disclosure provisions of the federal Consumer Leasing Act ("CLA"). There, this Court noted that "the following items do not appear to have been disclosed on the Lease in a manner substantially similar to the Model Form, pursuant to Regulation M section 1013.3(a): (1) the amount due at lease signing, (2) the payment schedule and total of periodic payments, (3) the total of payments, (4) a statement of purchase option, if permitted, and purchase option price, and (5) a statement referencing the non-segregated disclosures." *Id.* at *26. In denying the defendant's motion for summary judgment, this Court held that mere violation of the CLA without damages, or any adverse effect, was sufficient to establish a TCCWNA violation. *Id. See also Arcand v. Brother Int'l Corp.*, 2010 U.S. Dist. LEXIS 103942, *37-38 (D.N.J. Sept. 29, 2010) (J. Wolfson) (finding a TCCWNA claim does not require actual damages).

Other published decisions also make clear that a TCCWNA violation requires no more than the very placement of illegal or unenforceable provisions within consumer contracts, notices, or signs. *See McGarvey v. Penske Auto. Group*, 639 F. Supp. 2d 450, 457 (D.N.J. 2009) (declining to dismiss TCCWNA claims based on a provision violating the Magnuson Moss Warranty Act (MMWA), while dismissing MMWA claims based on the same violations for lack

of actual harm) (reversed on other grounds at 486 Fed. Appx. 276, 279 (3d Cir. N.J. 2012));

*United Consumer Financial Services Co. v. Carbo*, 982 A.2d 7, 22 (App.Div.2009) (sustaining

TCCWNA claims based on contract provisions that imposed check fees prohibited by the Retail

Installment Sales Act ("RISA"), even though neither the plaintiff nor any other class members

were in fact charged the prohibited fees and had no right of private action under RISA); *Barrows*

*v. Chase Manhattan Mortg. Corp*., 465 F. Supp. 2d 347, 362 (D.N.J. 2006) (dismissing

defendant's argument that damages, as opposed to mere disclosure of unlawful provisions, are

required to sustain a TCCWNA claim).  Thus, case law makes clear that the TCCWNA does not

require any adverse effect upon the consumer in order to bring a TCCWNA claim.

Defendant conveniently cites to *Wenger*, *Cameron*, and *Shah* to support its position. In

*Wenger*, Judge Sheridan acknowledged that there is a split in this jurisdiction as to the definition

of the term "aggrieved consumer." *Wenger v. Bob's Discount Furniture Inc.* No. 14-7707 (D.N.J.

Feb. 29, 2016 (transcript) (appeal filed Mar. 10 2016). However, the cases cited by Defendant—

*Wenger*, *Cameron*, and *Shah*—are each unpublished opinions and therefore non-binding and

non-precedential. *In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006).

Contrastingly, the cases supporting Plaintiff's position are published and therefore present

binding precedent. *See Shelton v. Restaurant.com Inc.*, 543 Fed. Appx. 168 (3d Cir. 2013);

*McGarvey v. Penske Auto. Group*, 639 F. Supp. 2d 450, 457 (D.N.J. 2009); *United Consumer*

*Financial Services Co. v. Carbo*, 982 A.2d 7, 22 (App.Div.2009); *Barrows v. Chase Manhattan*

*Mortg. Corp*., 465 F. Supp. 2d 347, 362 (D.N.J. 2006).

Defendant's final argument that *Dugan* requires a plaintiff to plead that he or she

reviewed or saw the unenforceable or invalid provisions in order to become an "aggrieved

consumer" completely ignores the *Dugan* court's ruling. In *Dugan*, the plaintiff filed suit

24

alleging that the restaurant illegally failed to provide prices on its menus. *Dugan v. TGI Fridays, Inc*., 445 N.J. Super. 59, 64 (App. Div. 2016). There, the Appellate Division ruled that the plaintiff could not establish numerosity because whether other patrons *received* the illegal menus presented an individualized inquiry. *Id.* at 78-79. If the other patrons had not received the illegal menus, of course the TCCWNA could not apply to them because, in that case, the consumer was never provided with a notice or sign that violated his or her clearly established rights. In fact, the Court explicitly stated that "each individual class member will be required to demonstrate that he or she was **provided** with a menu that violates the law." *Id.* Thus, *Dugan* was not concerned with whether the consumer read the menu, but rather whether the defendant displayed the menu to the consumer. *Id.*

Case law addressing similar "fail to view" arguments, as presented by Defendant here, clearly support Plaintiff's position. In *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997) the Defendant failed to provide the required FDCPA disclosures in a dunning letter which the plaintiff had never actually read. There, addressing the "fail to view" argument the Seventh Circuit held that considering reading is not an element of an FDCPA violation, a plaintiff need not plead to have read the letter.  Similarly, in *Kuhn v. Account Control Technology*, 865 F. Supp. 1443 (D. Nev. 1994), despite Defendant's arguments to the contrary, the court noted that whether the plaintiff read the letter was "of no moment on the issue of whether a violation has occurred;" the violation occurred the moment the consumer received the illegal letter. *Id.* at 1450.

Had the TCCWNA required actual knowledge as to the underlying violation, the Act would have imposed a reading or knowledge requirement within the statute, instead of remaining

silent. Thus, considering that the TCCWNA did not impose a reading or reliance requirement within its provisions Defendant's "fail to view" argument fails.

## CONCLUSION

The TCCWNA was specifically enacted to address the types of provisions used by Defendant in this case. These provisions present a risk of real harm given that a consumer may read these unlawful provisions and be deceived as to their rights. By placing these provisions within its contract with Plaintiff, Defendant has clearly violated the TCCWNA, thereby entitling Plaintiff to a remedy. Thus, Defendant's Motion to Dismiss should be denied.

Dated this 23rd day of September, 2016

Respectfully Submitted,

_____/s/ Fred M. Zemel _____

Fred M. Zemel Esq.
**The Zemel Law Firm, P.C.**
70 Clinton Ave.
Newark, New Jersey 07114
(T) 973-622-5297
Thezemellawfirm@icloud.com
Attorneys for Plaintiff

/s/ Daniel Zemel
Daniel Zemel, Esq.
**Zemel Law, LLC**
70 Clinton Ave. Suite 3
Newark, New Jersey 07114
(T) 862-227-3106
dz@zemellawllc.com
Attorneys for Plaintiff

26