UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FRUMA RUBIN, on behalf of
herself and all other similarly
situated consumers,

Plaintiff,

v.

J. CREW GROUP, INC.,

Defendant.

Civil Action No.
3:16-cv-02167

**ORAL ARGUMENT
REQUESTED**

**MOTION DAY
NOVEMBER 7, 2016**

---

## REPLY BRIEF ON BEHALF OF J. CREW GROUP, INC. IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

---

Christopher J. Michie
Attorney ID No. 005561995
Bruce W. Clark
Attorney ID No. 022131983
**CLARK MICHIE LLP**
220 Alexander Street
Princeton, NJ 08540
(609) 423-2143

Attorneys for Defendant

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ..................................................................................... 1

STATEMENT OF FACTS ......................................................................... 3

STANDARD OF REVIEW ........................................................................ 3

LEGAL ARGUMENT ............................................................................... 3

I.   THE PLAINTIFF HAS NO CONSTITUTIONAL
     STANDING ...................................................................................... 3

     A.   The Violation of a Statute or Statutory Right Is Not
          Enough, By Itself, To Establish Article III Standing............. 4

     B.   The Plaintiff Has Not Alleged A Concrete Injury ................ 8

II.  THE PLAINTIFF HAS NO STATUTORY
     STANDING ...................................................................................... 16

CONCLUSION ........................................................................................ 18

## TABLE OF AUTHORITIES

**PAGE**

### CASES

Acoli v. New Jersey State Parole Bd.,
224 N.J. 213 (2016) ................................................................... 16

Bowen v. First Family Fin. Servs., Inc.,
233 F.3d 1331 (11th Cir. 2000) ......................................... 14, 15

Braitberg v. Charter Comm'ns, ___ F.3d ___,
2016 WL 4698283 (8th Cir. Sept. 8, 2016) ......................... 6, 7

Candelario v. Rip Curl, Inc.,
No. SACV 16-00963 (slip op.) (N.D. Cal. Sept. 9, 2016) .................. 2, 14

Chisholm v. House,
183 F.2d 698 (10th Cir. 1950) ................................................. 10

Church v. Accretive Health, Inc.,
2016 WL 3611543 (11th Cir. July 6, 2016) ........................... 12

Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.,
40 F.3d 146 (7th Cir. 1994) ..................................................... 16

Dickens v. GC Servs. Ltd. P'ship,
2016 WL 3917530 (M.D. Fla. July 20, 2016) ......................... 12

Dillon v. Coles,
746 F.2d 998 (3d Cir. 1984) .................................................... 10

Doe v. Broderick,
225 F.3d 440 (4th Cir. 2000) ................................................... 10

**PAGE**

Dolan v. Select Portfolio Serv.,
2016 WL 4099109 (E.D.N.Y. Aug. 2, 2016) .................................... 12, 13

Encore D.E.C., LLC v. APES I, LLC,
2015 WL 5007773 (W.D. Wash. Aug 20, 2015) ................................... 16

Fed. Election Comm'n v. Akins,
524 U.S. 1 (1998) ................................................................ 11, 12

Hancock v. Urban Outfitters, Inc.,
830 F.3d 511 (D.C. Cir. 2016) ...................................................... 7

Havens Realty Corp. v. Coleman,
455 U.S. 363 (1982) ........................................................ 10, 11, 12

Hecht v. The Hertz Corp.,
2016 WL 6139911 (D.N.J. Oct. 20, 2016) .................................... 2, 15, 16

Hoffman v. Supplements Togo Mgmt., LLC,
419 N.J. Super. 596 (App. Div. 2011) ............................................ 13

In re Bridgestone/Firestone, Inc., Prods. Liab. Litig.,
288 F.3d 1012 (7th Cir. 2002) .................................................... 10

Irvine v. I.C. Sys., Inc.,
2016 WL 4196812 (D. Colo. July 29, 2016) ...................................... 12

James v. Glob. Tel*Link Corp.,
2016 WL 589676 (D.N.J. Feb. 11, 2016) ......................................... 13

Kendall v. Cubesmart L.P.,
2016 WL 1597245 (D.N.J. Apr. 21, 2016) ......................................... 9

PAGE

Lee v. Am. Express Travel Related Servs.,
2007 WL 4287557 (N.D. Cal. Dec. 6, 2007) ............................................. 9

Lee v. Am. Exp. Travel Related Servs., Inc.,
348 F. App'x 205 (9th Cir. 2009) ........................................................... 15

Lozano v. Frank Deluca Constr.,
178 N.J. 513 (2004) ................................................................................. 16

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) .................................................................................. 5

Macy v. GC Serv. Ltd. P'ship,
2016 WL 5661525 (W.D. Ky. Sept. 29, 2016) ......................................... 13

Nokchan v. Lyft, Inc.,
2016 WL 5815287 (N.D. Cal. Oct. 5, 2016) ............................................ 13

Palsgraf v. Long Island R. Co.,
162 N.E. 99 (N.Y. 1928) ...................................................................... 9, 10

Perry v. Columbia Recovery Grp., LLC,
2016 WL 6094821 (W.D. Wash. Oct. 19, 2016) ..................................... 13

Pub. Citizen v. Dep't of Justice,
491 U.S. 440 (1989) ........................................................................... 11, 12

Ragin v. Harry Macklowe Real Estate Co.,
6 F.3d 898 (2d Cir. 1993) ....................................................................... 12

PAGE

Ruckelshaus v. Monsanto Co.,
467 U.S. 986 (1984) ................................................................. 14

Russell v. Croscill Home, LLC,
No. 16-1190 (D.N.J. Oct. 11, 2016)................................................ 2, 15, 18

Smith v. U.S.,
508 U.S. 228 (1993) ................................................................. 17

Spokeo, Inc. v. Robins,
136 S. Ct. 1540 (2016) .................................................... passim

State v. Olivero,
221 N.J. 632 (2015) ................................................................. 16

Wales v. Lawrence,
36 N.J. Eq. 207 (Ch. 1882) ..................................................... 10

Warth v. Seldin,
422 U.S. 490 (1975) ................................................................. 7

## CONSTITUTIONAL PROVISIONS

U.S. CONST. art. III........................................................... passim

## STATUTES

N.J.S.A. 56:12-14........................................................... passim

N.J.S.A. 56:12-16........................................................... 8

## INTRODUCTION

The plaintiff's opposition brief spends page after page discussing the language on J. Crew's website and how it violates New Jersey's Truth in Consumer Contract, Warranty & Notice Act, N.J.S.A. 56:12-14 et seq. ("TCCWNA"). It then spends yet more pages talking about the effect that such language may have on other people – misleading them as to their legal rights and inducing them not to file lawsuits. But nowhere in her opposition brief – or the Amended Complaint – does Mrs. Rubin claim that she was misled by this language, that she was induced not to file a lawsuit, or that this language had any other effect on her. Indeed, she cannot make this assertion because she does not allege that she even visited the Terms of Use webpage on which this language appeared, far less that she saw, read or heard the language upon which her claim in this action is predicated.

Nowhere does Mrs. Rubin dispute this critical omission, which dooms her claim to failure. Nor does she cite a single case or statute allowing a plaintiff like her, who purchased a product and was entirely happy with it, to sue the seller based upon statements on a webpage that she never visited, or the presence of language that she never saw, read or heard. There are none.

This case is one of around thirty almost identical class actions filed over the past several months, each seeking millions of dollars in civil penalties under TCCWNA.[1]  To date, every court to consider a motion for dismissal of these cases under Article III has granted it.  Two of those cases involved plaintiffs who never read the website language.  See Hecht v. The Hertz Corp., 2016 WL 6139911, at *4 (D.N.J. Oct. 20, 2016); Russell v. Croscill Home, LLC, No. 16-1190 (Transcript) at 4, 8 (D.N.J. Oct. 11, 2016).[2]  Supp. Michie Cert. Exs. 1-2.  The court in the third case held that, even where the plaintiff did claim that she read the allegedly illegal language, she still did not allege a cognizable injury because the language had no effect on her personally.  Candelario v. Rip Curl, Inc., No. SACV 16-00963 (slip op.) at 4-5 (N.D. Cal. Sept. 9, 2016) (applying New Jersey law).  Supp. Michie Cert. Ex. 3.

The reasoning of these courts applies with equal force in this case.  The Amended Complaint should be dismissed.

---

[1] See Supplemental Declaration of Christopher J. Michie dated October 28, 2016 ("Supp. Michie Decl.") ¶ 3.

[2] The Russell court also held that such allegations do not meet the "aggrieved consumer" requirement for statutory standing under TCCWNA.  Transcript at 8-9 (citing N.J.S.A. 56:12-17).

## STATEMENT OF FACTS

Mrs. Rubin does not dispute that the Amended Complaint fails to allege:

- that the goods she ordered from the J. Crew website were in any way defective, or that she was in any way dissatisfied with her purchases.

- that she saw, read or heard the allegedly illegal language upon which her claim is based.

## STANDARD OF REVIEW

Nor does Mrs. Rubin contest the standard of review applicable to this motion – "[w]here, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating" injury in fact. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quotation omitted). The fact that this suit was filed as a class action is irrelevant. Mrs. Rubin must plead facts showing that she, and not just absent class members, were injured. Id. at 1547 n.6.

## LEGAL ARGUMENT

### I.   THE PLAINTIFF HAS NO CONSTITUTIONAL STANDING

With respect, the plaintiff makes a veritable dog's dinner of the law of constitutional standing, mixing and melding various legal concepts, analyses

and authorities in the first section of her brief.   See Pls. Brf. at 3-8 (Point A.I,

entitled "Plaintiff Maintains Article III Standing").   As best we can tell, Mrs.

Rubin is arguing first that Article III's injury requirement is satisfied whenever

a defendant violates a statute – or invades a legally protected interest granted

by statute – and that she need not plead or prove anything else. Id. at 4.

Second, assuming she is wrong on this point, she argues that her allegations

nevertheless satisfy Article III's injury requirement in two different ways:

> (1) she suffered "informational injury" – which she defines as being subjected to misrepresentations and/or not receiving legally required disclosures. Id. at 4, 7.

> (2) she was subjected to illegal contract terms. Id. at 13.

We address these arguments in turn.[3]

### A.   The Violation of a Statute or Statutory Right Is Not Enough, By Itself, To Establish Article III Standing

Mrs. Rubin argues that "statutory violations are sufficiently concrete to

establish Article III standing" and that "standing may exist solely by virtue of

statutes creating legal rights, the invasion of which creates standing." Pls. Brf.

at 4 (citations omitted).   In other words, a statutory violation, or the invasion

---

[3] Apparently Mrs. Rubin has abandoned any claim that she suffered damages. See First Amended Complaint ("FAC") ¶¶ 47, 54, 59, 63.

of a legal right or interest granted by statute, is sufficient, **by itself**, to create standing under Article III, regardless of whether that violation or invasion results in a concrete and particularized injury.

Mrs. Rubin is wrong.  The Supreme Court in <u>Spokeo</u> held quite clearly that "**Article III requires a concrete injury even in the context of a statutory violation.**"  136 S. Ct. at 1549 (emphasis added); <u>see also id.</u> at 1548 ("a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'") (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).  The <u>Spokeo</u> Court recognized that statutory violations "may result in no harm," giving two specific examples,[4] and remanded the action to the Ninth Circuit for a determination of whether the plaintiff's claimed injury in that case was a concrete one.  <u>Id.</u> at 1550.

What <u>Spokeo</u> also said is that there may be "some circumstances" in which the violation of a statutory right <u>does</u> result in a concrete injury in fact, and "the plaintiff in such a case need not allege any <u>additional</u> harm beyond

---

[4] The court observed that, in the context of the Fair Credit Reporting Act, certain violations – such as a credit agency's failure to provide a required notice to a user when the agency's report was nonetheless entirely accurate, and the dissemination of a credit report with minor inaccuracies (such as an incorrect zip code) – could not, by themselves, establish standing because the violations resulted in no concrete harm.  136 S. Ct. at 1550.

the one Congress has identified." See J. Crew's Moving Brief ("Mov. Brf.") at 15-16 & n.6 (quoting Spokeo, 136 S. Ct. at 1549 (emphasis in original)). But that is entirely different from saying that the violation of a statute or statutory right is sufficient, without more, to satisfy Article III.

Two recent Court of Appeals rulings explain the Spokeo decision and illustrate this point. In Braitberg v. Charter Comm'ns, ___ F.3d ___, 2016 WL 4698283 (8th Cir. Sept. 8, 2016), the plaintiff customer alleged that the defendant cable operator's policy of retaining customer information long after their accounts had been terminated violated the Cable Communications Act. Id. at *1. Like Mrs. Rubin, he contended that the violation of a statutory right constituted an injury in fact that was sufficient, by itself, to establish standing under Article III. Id. at *4. Thus he did not need to allege or show any "actual injury" resulting from the retention of his information. Id. Overruling this argument, the Eighth Circuit explained that:

> In Spokeo ... the Supreme Court rejected this absolute view ... "Article III," the Court explained, "requires a concrete injury even in the context of a statutory violation." A concrete injury must "actually exist," and it must be "real," not "abstract."

Id.

Similarly, in Hancock v. Urban Outfitters, Inc., 830 F.3d 511 (D.C. Cir. 2016), two clothing store customers were asked – illegally as it turned out – to provide zip code information when they paid for their purchases with a credit card. Id. at 512. As in Braitberg, the plaintiffs argued that the defendants' violation of the statute, by itself, constituted an Article III injury. Id. at 514. The appeals court rejected that contention emphatically:

> The Supreme Court's decision in Spokeo ... closes the door on [the plaintiffs'] claim that the Stores' mere request for a zip code, standing alone, amounted to an Article III injury. **Spokeo held that plaintiffs must have suffered an actual (or imminent) injury that is both particularized and "concrete * * * even in the context of a statutory violation." For that reason, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." The plaintiff must allege some "concrete interest" that is "de facto," "real," and "actually exist[s]."**

Id. at 514 (quoting Spokeo, 136 S. Ct. at 1548-49) (emphasis added).[5]

_____

[5] Like Mrs. Rubin, the plaintiffs in both Braitberg and Hancock relied upon the statement in some decisions (most notably Warth v. Seldin, 422 U.S. 490, 500 (1975)) that "standing ... may exist **solely** by virtue of statutes creating legal rights, the invasion of which creates standing." (emphasis added). Both courts refused to interpret this phrase as excusing proof of a concrete and particularized injury for purposes of Article III. See Hancock, 830 F.3d at 514 (plaintiffs "vastly overread that case"); Braitberg, 2016 WL 4698283, at *4 (Spokeo "rejected that absolute view"); see also Spokeo, 136 S. Ct. at 1548 (explaining that "invasion of a legally protected interest" must [also] be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical") (quotations omitted).

B.   **The Plaintiff Has Not Alleged A Concrete Injury**

1.   Absent Allegations that She Actually Saw, Read or Heard the
Language Her Claim Is Based on, Mrs. Rubin Has No Injury

The Amended Complaint fails to allege:

- that the goods Mrs. Rubin ordered from the J. Crew website were in any way defective, or that she was in any way dissatisfied with her purchases.

- that she saw, read or heard the allegedly illegal language upon which her claim is based.

In such circumstances, she cannot satisfy Spokeo's requirement of pleading the existence of an injury that is "de facto," "real," and "actually exist[s]."

(a)   Mrs. Rubin Has Not Suffered Any Informational Injury

First, Mrs. Rubin argues that she has suffered an "informational injury," which she defines as being subjected to misrepresentations and/or not receiving legally required disclosures. Pls. Brf. at 4, 7. However, she ignores the critical point that she was not "subjected to," and therefore could not suffer any injury from, a misrepresentation that she did not see, read or hear. See Mov. Brf. at 11 n.3, at 19 n.8 (collecting cases). As for legally required disclosures, the only affirmative disclosure requirement she identifies in the Amended Complaint is contained in N.J.S.A. 56:12-16, and applies only when

a contract states that provisions may not be applicable in some jurisdictions, in which case the seller must also state whether they are applicable in New Jersey. Kendall v. Cubesmart L.P., 2016 WL 1597245, at *9 (D.N.J. Apr. 21, 2016). But again, since Mrs. Rubin does not allege that she saw, read or heard the language specified in the first part of this provision, she cannot claim that she was injured by her failure to receive the language specified in the second part.

In short, the most that Mrs. Rubin can demonstrate is a statutory violation – a misrepresentation or a failure to provide information "in the air" – which is insufficient to establish constitutional standing. As the district court explained in Lee v. Am. Express Travel Related Servs., 2007 WL 428557 (N.D. Cal. Dec. 6, 2007), "for plaintiffs' theory of injury to fly, the Court must conclude that the inclusion of unconscionable terms in plaintiffs' contract, standing alone, caused injury in fact." Id. at *2. **"No court, state or federal, has held that a plaintiff has standing in such circumstances."** Id. (emphasis added). [6]

_____

[6] Mrs. Rubin seems to be suggesting that language that violates a statute is actionable because its mere presence causes injury – not just to the reader, but to everyone in the world, regardless of whether they have seen it or read it, or suffered the effects of it. Courts have rejected this type of wrongful conduct "in the air" theory for almost a century. See, e.g., Palsgraf v. Long Island R. Co., 162 N.E. 99, 99 (N.Y. 1928)

Mrs. Rubin does not dispute the absence of any such authority. Instead, she cites a panoply of cases and statutes from other contexts that she claims support a generic finding that misrepresentation or failure to disclose information can, in some circumstances, support Article III standing. Pls. Brf. at 7-12. But even if that were true, these cases do not involve a situation where the plaintiff asserts a claim based on language she never saw, read or heard. And nothing in those cases or statutes supports a finding of constitutional standing here.

For example, the question in Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), was whether two tester-plaintiffs[7] had Article III standing to make a claim based on an alleged violation of the Fair Housing Act's prohibition on

---

(Cardozo, J.) ("Proof of negligence in the air, so to speak, will not do"); see also Wales v. Lawrence, 36 N.J. Eq. 207, 211 (Ch. 1882) ("complainants have no right to complain [about fraud that] has done them no harm"); Chisholm v. House, 183 F.2d 698, 703 (10th Cir. 1950) ("Fraud in the air, so to speak, is not actionable"); Dillon v. Coles, 746 F.2d 998, 1004 (3d Cir. 1984) ("Just as in the tort field, where 'negligence in the air' is not enough to fasten liability on a defendant, so in a Title VII case discrimination in general does not entitle an individual to specific relief"); Doe v. Broderick, 225 F.3d 440, 457 (4th Cir. 2000) ("there is no such thing as a Fourth Amendment violation 'in the air'"); see also In re Bridgestone/Firestone, Inc., Prods. Liab. Litig., 288 F.3d 1012, 1017 (7th Cir. 2002) (recognizing that "[n]o injury, no tort, is an ingredient of every state's law").

[7] "Testers" were individuals who, without an intent to rent or purchase a home or apartment, posed as renters or purchasers for the purpose of collecting evidence of discriminatory practices in housing. Id. at 373.

false statements concerning the availability of housing. Id. at 372–73 (citation omitted).   One plaintiff, an African American, alleged that the defendant falsely told her that it had no apartments available for rent on four occasions, while at the same time it told the other tester – a white person – that it did have rental apartments available. Id. at 368.   Thus, unlike this case, the plaintiff actually received the misrepresentation in a face-to-face encounter. Id. The white tester, on the other hand, did not receive any misrepresentation and thus had no standing to make a claim. Id. at 374.[8]

The two other Supreme Court decisions cited by Mrs. Rubin on "informational injury" are likewise inapposite because the plaintiffs in those cases actually sought and were denied information that was statutorily-guaranteed. See Fed. Election Comm'n v. Akins, 524 U.S. 1, 15-16, 24-25 (1998) (finding group of voters suffered injury under Article III when they asked for and were denied information from the Federal Election Committee); Pub. Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989) (public interest

---

[8] Over a decade later, in Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898 (2d Cir. 1993), the Second Circuit applied Havens in the context of housing advertisements alleged to violate the FHA. Id. at 901. The court found that "a plaintiff who prove[d] that she read the challenged advertisements" had standing under Article III. Id. at 904 (emphasis added).

group had standing to sue after they requested and were denied access to meeting minutes that were required to be produced under the Federal Advisory Committee Act).

The plaintiff also cites a series of cases decided under various other federal statutes, most of which involved situations where a plaintiff received a communication that failed to include information that was statutorily mandated. See, e.g., Church v. Accretive Health, Inc., 2016 WL 3611543, at *3 (11th Cir. July 6, 2016); Irvine v. I.C. Sys., Inc., 2016 WL 4196812, at *3 (D. Colo. July 29, 2016); Dickens v. GC Servs. Ltd. P'ship, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016).  None of these decisions involved or addressed the question presented here – whether a plaintiff who did not receive, see, read or hear the language her claim is based on has standing to pursue such a claim.[9]

---

[9] While the Court need not reach the issue, J. Crew respectfully disagrees with the unpublished decision recognizing informational injury in Church, which cited Akins and Pub. Citizen as support for its holding.  Those cases, like Havens Realty, "involved interests of much greater and broader significance to the public than those at issue in Church."  Perry v. Columbia Recovery Grp., LLC, 2016 WL 6094821, at *8 n. 4 (W.D. Wash. Oct. 19, 2016).  For that reason, the decision in Church has been criticized by courts across the country.  See, e.g., Dolan v. Select Portfolio Serv., 2016 WL 4099109, at *4 (E.D.N.Y. Aug. 2, 2016) (rejecting Church, "both Akins and Public Citizen involved statutory rights intended to protect and promote public

(b)  Mrs. Rubin Did Not Suffer a Concrete Injury As A
<u>Result of Being Subjected to Illegal Contract Terms</u>

Mrs. Rubin also contends that she has suffered an injury because she "has personally entered into a consumer contract with the defendant," a contract which violated her rights.  Pls. Brf. at 13.  Assuming, for purposes of this motion only, that the language in the Terms of Use does in fact violate TCCWNA, the plaintiff ignores the fact that she did not see, read or hear that language, did not assent to it, and therefore was not bound by it.  <u>See</u>, <u>e.g.</u>, <u>Hoffman v. Supplements Togo Mgmt., LLC</u>, 419 N.J. Super. 596, 609-12 (App. Div. 2011) ("[f]or mutual assent to exist, there must have been a meeting of the minds of the parties ... This signifies that each party to the contract must have been fairly informed of the contract's terms before entering into the agreement"); <u>James v. Glob. Tel*Link Corp.</u>, 2016 WL 589676, at *5 (D.N.J. Feb. 11, 2016) ("courts look to whether users were provided with a reasonably conspicuous notice of the existence of contract terms and whether the user registered an unambiguous manifestation of assent to these terms").

---

interests that, by their nature, are intangible and diffuse, and would be rendered wholly unenforceable were intangible injury, or bare procedural violations, categorically insufficient to confer standing"); <u>Nokchan v. Lyft, Inc.</u>, 2016 WL 5815287, at *8-9 (N.D. Cal. Oct. 5, 2016); <u>Macy v. GC Serv. Ltd. P'ship</u>, 2016 WL 5661525, at *3 n.3 (W.D. Ky. Sept. 29, 2016) (same).

To the extent that Mrs. Rubin wishes to take the position that she <u>is</u> bound by the Terms of Use, then the action should be dismissed on the alternative ground that TCCWNA does not apply, since the Terms of Use provide for the application of New York law to any dispute. <u>See</u> FAC Ex. A. The plaintiff cannot have it both ways – the Terms of Use either do not apply, in which case she has no injury, or they do apply, in which case New York and not New Jersey law governs.

Mrs. Rubin also does not allege that J. Crew has ever attempted to enforce the Terms of Use against her with respect to any possible claim.[10]  This renders any alleged "injury" speculative and far from concrete.  As the Ninth Circuit explained in <u>Lee</u> (an appeal involving a challenge to allegedly illegal arbitration and class action waiver provisions in a contract):

> Plaintiffs cannot satisfy the requirements of Article III because they have not yet been injured by the mere inclusion of these provisions in their agreements, nor is the threat of future harm from such provisions sufficiently imminent to confer standing. <u>See</u> <u>Ruckelshaus v. Monsanto Co.</u>, 467 U.S. 986, 1019-20 (1984) (challenge to constitutionality of arbitration scheme not ripe for resolution because Monsanto "did not allege or establish that it had been injured by actual arbitration under the statute"); <u>Bowen</u>

---

[10] Given that Mrs. Rubin does not allege that the products she purchased from J. Crew were defective or that she was in any way dissatisfied, there literally is no claim to which the Terms of Use could apply. <u>See</u> <u>Candelario</u>, slip op. at 4-5.

v. First Family Fin. Servs., Inc., 233 F.3d 1331, 1340-41 (11th Cir. 2000) ("There is at most a 'perhaps' or 'maybe' chance that the arbitration agreement will be enforced against these plaintiffs in the future, and that is not enough to give them standing to challenge its enforceability.").

Lee v. Am. Exp. Travel Related Servs., Inc., 348 F. App'x 205, 207 (9th Cir. 2009); see also Russell, No. 16-1190, Transcript at 4 (no injury absent allegation that, inter alia, "any of the terms and conditions ... were invoked by the defendant in any claim that plaintiff had").[11]

In the end, Mrs. Rubin alleges a bare statutory violation of TCCWNA, nothing more.   Under Spokeo and its progeny, such allegations are insufficient.  As Judge Martini explained in Hecht:

> Plaintiff does not allege that he even viewed (let alone, relied upon to his detriment) either of these sections of Hertz's website ... [¶] At bottom, Plaintiff's FAC presents the quintessential "bare procedural harm, divorced from any concrete harm," which

---

[11] Mrs. Rubin makes the repeated assertion that the Terms of Use "create[] a risk of real harm because consumers are likely to believe that such provisions validly limit the consumer's rights and thereafter refrain from bringing an otherwise actionable claim."   Pls. Brf. at 8-9.   To the extent that she is suggesting that this "risk" gives rise to some form of Article III injury, her theory is again barred by the fact that she did see, read or hear the language in the Terms of Use.   If she did not become aware of that language, then by definition it could not have led her to believe anything about her rights, and certainly could not have led her to refrain from bringing any claim.   Mrs. Rubin cannot rely upon injuries sustained by other, unnamed people just because she filed this case as a class action.   Spokeo, 136 S. Ct. at 1547 n.6.

cannot "satisfy the injury-in-fact requirement of Article III."

2016 WL 6139911, at *4; see also Ryan, No. 16-1190, Transcript at 8.

## II.   THE PLAINTIFF HAS NO STATUTORY STANDING

The plaintiff contends that "the ordinary meaning of aggrieved consumer is straightforward," yet she then proceeds to devote twelve pages to the definition of that phrase in her brief.  Pls. Brf. at 15, 13-25.  The vast majority of that discussion is irrelevant because, as Mrs. Rubin also states, the threshold question here is whether the Legislature's intent is clear from the statutory language.  "If so, the law is applied as written."  Id. at 14 (citing Lozano v. Frank Deluca Constr., 178 N.J. 513, 522 (2004)).  Only if the statutory language is not clear does the Court look beyond the statutory text to extrinsic sources to aid in understanding the Legislature's will."  Acoli v. New Jersey State Parole Bd., 224 N.J. 213, 227 (2016) (citing State v. Olivero, 221 N.J. 632, 639 (2015)).

The fact that the word "aggrieved" is not defined in the statute does not mean that it is in any way unclear or ambiguous.  Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc., 40 F.3d 146, 152 n. 10 (7th Cir. 1994); Encore D.E.C., LLC v. APES I, LLC, 2015 WL 5007773, at *8 (W.D. Wash.

Aug 20, 2015).  Instead, when a word is not defined, it should be afforded its ordinary or natural meaning.  Smith v. U.S., 508 U.S. 223, 228 (1993).

In this case, the parties can go back and forth on the precise meaning of the term "aggrieved" in a variety of specific situations (for example, whether it requires some form of pecuniary loss or "actual damages").  But such an inquiry is not necessary.  The only question the Court needs to resolve is whether the term "aggrieved," given its ordinary meaning, requires some form of adverse impact or negative effect.  If so, then this case is barred because the plaintiff does not allege any.

Finally, even if the Court were to accept plaintiff's position that "aggrieved consumer" means "a consumer whose rights have been violated and is therefore entitled to a remedy," Pls. Brf. at 15, she still lacks statutory standing because she did not receive, see, read or hear the language that is alleged to violate the statute, and thus her rights have not been violated.  As the court explained in almost identical circumstances in Russell:

> [T]he plaintiff has not demonstrated that he's "aggrieved" … In fact, the plaintiff does not even allege he viewed the illegal terms and conditions on the defendant's website, and there is no allegation of any injury to the plaintiffs.  There is nothing that alleges that the product was defective, and there is nothing that

indicates that the plaintiff sustained any type of injuries.

<u>Russell</u>, No. 16-1190, Transcript at 8-9.

## CONCLUSION

The doctrines of constitutional and statutory standing preclude a plaintiff who was entirely satisfied with her retail purchases from pursuing a multi-million dollar lawsuit based on language that she never saw, heard and which had no adverse effect on her whatsoever.  This case should be dismissed.

Respectfully submitted,

Christopher J. Michie
Attorney ID No. 005561995
Bruce W. Clark
Attorney ID No. 022131983
**CLARK MICHIE LLP**
220 Alexander Street
Princeton, NJ 08540
(609) 423-2143

Attorneys for Defendant
Dated: October 28, 2016        J. Crew Group, Inc.