***NOT FOR PUBLICATION***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRUMA RUBIN, on behalf of himself and all others similarly situated, | : : : | Civ. Action No.16-2167 (FLW) |
| Plaintiffs, | : : | |
| v. | : : | **OPINION** |
| J. CREW GROUP, INC., | : : | |
| Defendant. | : : | |

**WOLFSON, District Judge**:

Plaintiff Fruma Rubin ("Plaintiff") brings this putative class action against Defendant J. Crew Group, Inc. ("J Crew" or "Defendant"), for including certain Terms of Use on the J Crew retail website that allegedly violate New Jersey's Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14, *et seq.* ("TCCWNA" or the "Act"). In the instant matter, Defendant moves to dismiss Plaintiff's claims for, *inter alia*, lack of Article III standing, as well as statutory standing. For the reasons that follow, Defendant's motion is **GRANTED**.

### BACKGROUND

For the purposes of this motion, the Court recounts the facts from the Amended Complaint and takes them as true. J Crew owns and operates the retail website "jcrew.com" (the "Website"), which Defendant uses to sell clothing directly to consumers. Amended Complaint ("Compl."), ¶ 9. The Website

provides a "Terms and Conditions" Section, which purportedly governs the use of the site and "J. Crew's services, applications, contents and products." *Id.* at ¶ 11.

According to the Complaint, the relevant provisions of the Terms and Conditions at issue in this case are as follows:

> IN NO EVENT SHALL J.CREW, ITS AFFILIATES OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR CONTENT OR SERVICE PROVIDERS BE LIABLE TO YOU FOR ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES, LOSSES OR CAUSES OF ACTION (WHETHER IN CONTRACT OR TORT, INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE OR OTHERWISE) ARISING FROM OR IN ANY WAY RELATED TO THE USE OF, OR THE INABILITY TO USE, OR THE PERFORMANCE OF THE SITE OR THE CONTENT AND MATERIALS OR FUNCTIONALITY ON OR ACCESSED THROUGH THE SITE, INCLUDING, WITHOUT LIMITATION, LOSS OF REVENUE, OR ANTICIPATED PROFITS, OR LOST BUSINESS, DATA OR SALES OR ANY OTHER TYPE OF DAMAGE, TANGIBLE OR INTANGIBLE IN NATURE, EVEN IF J.CREW OR ITS REPRESENTATIVE OR SUCH INDIVIDUAL HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. SOME JURISDICTIONS DO NOT ALLOW THIS LIMITATION OR EXCLUSION OF LIABILITY, SO SOME OF THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU.
>
> Indemnification:
>
> You agree to defend, indemnify and hold J.Crew, its directors, officers, employees, agents and affiliates harmless from any and all claims, liabilities, damages, costs and expenses, including reasonable attorneys' fees, in any way arising from, related to or in connection with your use of the Site, your violation of the Terms or the posting or transmission of any materials on or through the Site by you, including, but not limited to, any third-party claim that any information or materials you provide infringes any third-party proprietary right.

*Id.* at ¶ 16.

Plaintiff alleges that through those terms, "Defendant impermissibly limits its liabilities and obscures the effects of its disclaimers on New Jersey

[consumers]." *Id.* at ¶ 15. More specifically, Plaintiff alleges that Defendant's exculpatory and indemnification clauses impermissibly attempt to absolve itself of all liability, and completely remove the duties J Crew owes to its customers. *Id.* at ¶ 17. Plaintiff claims, for example, that "Defendant owes a legal duty to the Plaintiff or any other consumer to ensure that there is no unreasonable risk of harm while making purchases on its website, or while using Defendant's products." *Id.* at ¶ 19. Plaintiff avers that the inclusion of those clauses violates the TCCWNA.

Plaintiff also alleges that Defendant wrongfully attempts to prevent consumers from (1) "seeking punitive damage awards for damage incurred"; (2) "seeking redress for violations of their internet commerce rights"; and (3) pursuing any damages, including treble and statutory damages, attorney's fees and costs for any illegal actions engaged in by Defendant on its website." *Id.* at ¶¶ 23-33. By including these limitations, Plaintiff alleges that Defendant has violated the TCCWNA. Finally, Plaintiff accuses Defendant of violating the Act by including the following statement: "SOME JURISDICTIONS DO NOT ALLOW THIS LIMITATION OR EXCLUSION OF LIABILITY, SO SOME OF THE ABOVE LIMITATIONS MAY NOT APPLY TO YOU." *Id.* at ¶ 34. Plaintiff asserts that the illegal placement of these provisions on the Website violated two separate sections of the TCCWNA: N.J.S.A. 56:12-15 and -16, *i.e.,* Count I and Count II, respectively.

Plaintiff avers that throughout the last six years, she has purchased products from the Website for personal, family and household purposes. *Id.* at

3

¶ 13. As to her injury, Plaintiff explains that she has sustained "a concrete and particularized injury by Defendant's placement of numerous provisions within its terms and conditions that violated [her] rights under New Jersey law." *Id.* at ¶ 38. Plaintiff further alleges that she has suffered harm by Defendant's failure to "specify whether all of the terms stated [on the Website] applied or did not apply in New Jersey." *Id.* at ¶ 39.

Now, Defendant moves to dismiss Plaintiff's Complaint based on a lack of standing, as required by Article III of the Constitution, and by TCCWNA itself.

## DISCUSSION

### I. Article III Standing

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint for lack of standing. Fed. R. Civ. P. 12(b)(1); *see also Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175 (3d Cir. 2000). Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). Indeed, "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)) (alterations original).

To show standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of,

and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016)) (internal quotations and citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (footnote omitted).

To allege injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Nickelodeon*, 827 F.3d at 272 (quoting *Finkelman*, 810 F.3d at 193) (internal quotations omitted). A harm is "concrete" only "if it is '*de facto*'; that is, it must actually exist"—it cannot be merely "abstract." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548). Moreover, a harm need not be tangible, to be "concrete." To determine whether an "intangible" harm constitutes an injury-in-fact sufficient for standing purposes, consideration should focus on whether the purported injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549 (citation omitted). In that connection, "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in

law.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)) (alteration original).

Importantly, in the context of a statutory violation, allegations of a "bare procedural violation [under the statute], divorced from any concrete [or substantive] harm" cannot satisfy the injury-in-fact requirement. *Spokeo*, 136 S. Ct. at 1549 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing")). Stated differently, not every "bare" violation of a right granted by a statute is inherently injurious. Rather, such a violation must result in a "concrete" harm. That requirement remains in circumstances where a statute "purports to authorize [a] person to sue to vindicate [a statutory procedural] right." *Id.*; *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing").

Thus, standing based on a violation of a statutorily created right turns on whether such a right is substantive or merely procedural. A "procedural right" is defined as "[a] right that derives from legal or administrative procedure; a right that helps in the protection or enforcement of a substantive right." *In re Michaels Stores, Inc.*, No. 14-7563, 2017 U.S. Dist. LEXIS 9310, at *17 n.12 (D.N.J. Jan. 24, 2017) (quoting *Landrum v. Blackbird Enters., LLC*, No.16-0374, 2016 U.S. Dist. LEXIS 143044, at *3 (S.D. Tex. Oct. 3, 2016)) (internal citations omitted) (alteration original). On the other hand, a "substantive right" is "[a] right that

6

can be protected or enforced by law; a right of substance rather than form." *Id.* (citing *Landrum*, 2016 U.S. Dist. LEXIS 143044, at *3) (internal citations omitted) (alteration original). "To the extent that a violation of the procedural right has no effect on the substantive right, the bare procedural violation does not cause an injury of the sort that, alone, would support standing."[1] *Id.* (citing *Landrum*, 2016 U.S. Dist. LEXIS 143044, at *3).

Here, Defendant argues that Plaintiff lacks standing because nowhere in the Complaint does Plaintiff explain that she saw or read the language upon which her claims are based, that she relied upon the language to her detriment, or that she suffered any kind of adverse impact because of it. Absent these facts, Defendant maintains that Plaintiff has not alleged any concrete or particularized harm. In response, Plaintiff argues that because Defendant's website subjected

---

[1] In *Landrum*, the court provided an example to clarify the sometimes-confusing difference between a procedural and substantive violation:

> Consider a hypothetical statute requiring building managers to notify occupants in the event of a fire in a timely manner via a loudspeaker using specific language. Now imagine that, during a fire, a manager effectively communicates a warning to an occupant in a timely manner but does so in person, after which the occupant escapes unharmed. The occupant was subjected to a bare, procedural violation. If, however, another occupant was never warned but smelled smoke and safely exited the building, the latter occupant was subject to a substantive violation of his right to be timely notified, albeit without independent, "tangible" harm. In the latter case, a statutory remedy would be appropriate. In the former case, only the manner in which the warning was to be delivered (*i.e.*, the procedure) failed to meet statutory guidelines. The underlying right, the right to be timely notified in the event of a fire, was honored.

*Landrum*, 2016 U.S. Dist. LEXIS 143044, at *9–10.

Plaintiff to false and deceptive misrepresentations in contravention of the TCCWNA, Plaintiff has alleged sufficient statutory violations to establish standing under *Spokeo*. Put differently, Plaintiff posits that so long as she pleads a violation under the TCCWNA, she has statutory standing to sue. Plaintiff's position, however, cannot be reconciled with *Spokeo*.

Since *Spokeo*, only a few district court decisions have dealt with Article III standing-related issues in the context of the TCCWNA. But, at least two courts within this district have specifically addressed whether a plaintiff has standing to sue based upon purported TCCWNA violations through terms and conditions of an online website. *See Hite v. Lush Internet Inc.*, No. 16-1533, 2017 U.S. Dist. LEXIS 40949 (D.N.J. Mar. 23, 2017); *Hecht v. Hertz Corp.*, No. 16-1485, 2016 U.S. Dist. LEXIS 145589 (D.N.J. Oct. 20, 2016).

In *Hite*, the plaintiff alleged that the "Terms of Use" on the website of defendant Lush Internet, Inc. constituted a consumer contract with exculpatory provisions that violate the TCCWNA. *Hite*, 2017 U.S. Dist. LEXIS 40949, at *1. The defendant argued that although plaintiff purchased products from the website, plaintiff had not alleged that she had read or been harmed by the Terms of Use, and therefore, she lacked standing as an "aggrieved consumer" under the TCCWNA. Finding defendant's position persuasive, the court, citing *Spokeo*, reasoned:

> Here, because Plaintiff did not assent to the Terms of Use, they simply do not bind her as a matter of contract law. Because Plaintiff does not seek to vindicate any underlying rights secured by the TCCWNA - i.e. she is seeking only to bring the Terms of Use into accord with what she believes New Jersey law requires, not to

8

> actually bring a suit or recover damages which she believes are unlawfully barred by the Terms of Use - she does not have standing to sue. Moreover, because the Terms of Use were not displayed to her, she cannot claim harm from their existence in a hidden corner of the Lush website. Based upon the allegations in the Amended Complaint, the harm that Plaintiff has suffered from the allegedly unlawful limitations of liability in the Terms of Use is metaphysical at best.

*Id.* at *19.

The *Hecht* court reached the same result. In *Hecht*, the plaintiff, like Plaintiff in this case, brought suit against defendant Hertz based upon certain terms on Hertz's online website, which the plaintiff alleged were in violation of the TCCWNA. *Hecht*, 2016 U.S. Dist. LEXIS, at *3. In particular, the plaintiff complained that the website neglected to identify whether New Jersey is one of the jurisdictions where an exception applies to the website's general provision that price, rate and availability of products or services are subject to change without notice. *Id.* at *4. Relying on *Spokeo*, the court found that the plaintiff failed to allege any concrete harm sufficient to meet Article III standing. Rather, among other reasons, the court explained that the plaintiff's purported injuries were merely bare statutory violations, because he did not allege whether any of the website's provisions are in fact unenforceable or invalid in New Jersey. *Id.* at *7. The court stressed that "there can be no concrete harm resulting from a situation where a [p]aintiff did not know whether the provisions were 'void, unenforceable or inapplicable to reservations made by New Jersey citizens,' but these provisions ultimately were enforceable, *i.e.*, [p]laintiff was able to access the full panoply of benefits offered." *Id.*

9

Another decision, *Candelario v. RIP Curl, Inc.*, No. 16-963, 2016 U.S. Dist. LEXIS 163019 (C.D. Cal. Sept. 7, 2016), sheds additional light on the standing analysis that I must undertake, here. The plaintiff, in *Canderlario*, sued defendant Rip Curl for violating the TCCWNA, because she was "exposed" to Rip Curl's website that included various terms and conditions which were allegedly not in compliance with New Jersey law. *Id.* at *3-4. The court found that the plaintiff lacked standing based upon *Spokeo,* since she failed to allege any harm that resulted from the website's purported violations of the TCCWNA. For instance, while the plaintiff claimed that the website "barred" her from bringing a claim under the New Jersey Products Liability Act, the court nonetheless dismissed the plaintiff's TCCWNA claims for her failure to allege that the clothing purchased from the website was dangerous, or that the plaintiff was in any way harmed by those clothes. In essence, the court held that no standing could be found because the plaintiff had not alleged that she was actually injured by defendant. *Id.* at *6. The court explained:

> The FAC alleges that the Terms and Conditions are illegal because they strip her ability to bring claims arising from "unreasonable risk of harm;" injuries sustained from dangerous products; harm from the illegal acts of third party hackers; and punitive damages for malicious, wanton, or willful creation of unreasonable risk of harm by Defendant. Yet nowhere in the FAC does Plaintiff allege that she actually has a claim against Defendant which falls into any of the aforementioned categories. If such a claim has not accrued, Plaintiff cannot have an "actual or imminent" injury.

*Id.* (internal citations omitted).

In short, what each of these courts has held is that without an underlying concrete harm, a plaintiff may not base his/her complaint solely on allegations

of wrongdoing predicated on TCCWNA violations. To illustrate, if a consumer alleges that the terms and conditions of an online retailer's website violated the TCCWNA by excluding punitive damages in suits, that consumer would not have standing to bring a TCCWNA claim without also asserting an injury inflicted by the retailer that could entitle him/her to punitive damages at the outset. Absent that underlying harm, under *Spokeo,* the consumer's alleged TCCWNA violation is merely procedural. Because Plaintiff's TCCWNA claims in this case are pled in such a without any claim of injury, I find that she lacks standing to sue.

"The TCCWNA . . . prohibits a seller from entering into a contract with a consumer that includes any provision that violates a federal or state law." *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 278 (App. Div. 2007); *Kent Motor Cars, Inc. v. Reynolds and Reynolds Co.,* 207 N.J. 428, 457 (2011) ("The purpose of the TCCWNA . . . is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts."). The statute provides in relevant part:

> No seller . . . shall in the course of his business offer to any consumer or prospective consumer or enter into any written contract or give or display any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15. The Act further provides that "[n]o consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act. Any such provision shall be null and void." N.J.S.A. 56:12-16. The statute establishes damages for

11

"aggrieved consumers," and states that the rights accorded under this law "are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State." N.J.S.A. 56:12-17 and -18.  In other words, the TCCWNA does not "recognize any new consumer rights but merely impose[s] an obligation on sellers to acknowledge clearly established consumer rights."  *Shelton v. Restaurant.com*, 214 N.J. 419, 432 (2013).

To state a claim under the TCCWNA, a plaintiff must allege each of the following: (1) the plaintiff is a consumer within the statute's definition; (2) the defendant is a seller; (3) the defendant offers a consumer contract or gives or displays any written notice or sign; and (4) the contract, notice or sign includes a provision that "violate[s] any legal right of a consumer" or responsibility of a seller. *Mattson v. Aetna Life Ins. Co.*, 124 F. Supp. 3d 381, 392-93 (D.N.J. 2015) (citing *Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132, 135 (3d Cir. 2014)).

Here, Plaintiff alleges that the Terms and Conditions of J Crew's Website violate the TCCWNA in the following ways:

> 1. Defendant's exculpatory and indemnification clauses impermissibly attempt to absolve itself of all liability, and completely remove the duties it owes to consumers in violation of New Jersey law. Compl., ¶ 17 ("In no event shall J.Crew, its affiliates or any of their respective directors, officers, employees, agents or content or service providers be liable to you for any direct, indirect, special, incidental, consequential, exemplary or punitive damages, losses or causes of

12

  action (whether in contract or tort, including, but not limited to, negligence or otherwise) . . . . .").

2. The Terms and Conditions deny rights, responsibilities and remedies under the New Jersey Punitive Damages Act. *Id.* at ¶¶ 23 – 26.

3. The Terms and Conditions deny rights, responsibilities and remedies to consumers damaged by failure to provide internet security and notice under various New Jersey statutes, such as New Jersey Consumer Fraud Act. *Id.* at ¶¶ 27- 30.

4. The Terms and Conditions also deny rights, responsibilities and remedies to consumer to obtain attorney's fees and costs, which "go directly against the New Jersey Consumer Fraud Act, the TCCWNA," and others. *Id.* at ¶¶ 31-32.

5. The Terms and Conditions violate the Act because "certain limitations of lability may not apply to Plaintiff in some jurisdiction without making clear whether such limitations are valid in New Jersey." *Id.* at ¶ 34.

  Conspicuously absent from Plaintiff's Complaint, however, is any underlying injuries that Plaintiff has suffered as a result of purchasing Defendant's merchandise or using the J Crew Website.  Plaintiff merely alleges that she has made purchases from the Website.  In fact, Plaintiff does not even aver that she viewed or relied on the Terms and Conditions that are alleged to be violative of the TCCWNA. And, the Complaint is solely based on claims arising

out of the TCCWNA. Therefore, there is no indication that Plaintiff had a claim against Defendant which the Terms and Conditions prevented her from bringing. In that regard, the genesis of Plaintiff's lawsuit "is seeking only to bring the Terms [and Conditions] into accord with what she believes New Jersey law requires, not to actually bring a suit or recover damages which she believes are unlawfully barred" by those Terms. *Hite*, 2017 U.S. Dist. 40949, at *19. Indeed, contrary to Plaintiff's position, *Spokeo* recognized that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549. This is precisely what Plaintiff has done in her Complaint — plead only procedural statutory violations under the TCCWNA. Hence, Plaintiff has not alleged any concrete harm in accordance with *Spokeo*. *See Hecht*, 2016 U.S. Dist. LEXIS 145589, at *6 (finding that the plaintiff alleging suit under TCCWNA Section 16 did not have standing because he "does not allege that he even viewed (let alone, relied upon to his detriment)" the website in question).

Nevertheless, in an attempt to salvage standing post-*Spokeo*, Plaintiff argues that she has suffered informational injury. According to Plaintiff, because she was subject to "false" information and did not receive the statutorily mandated disclosures, she has standing to bring suit to vindicate her rights under the TCCWNA. However, as a threshold issue, nowhere in the Complaint does Plaintiff allege that she suffered any informational injury. In that

14

connection, there are no allegations in the Complaint explaining that type of harm as a result of the purported TCCWNA violations. In fact, Plaintiff has not alleged that she saw or read the Terms and Conditions on the Website, let alone that she was deprived of certain information. Based on this pleading failure, Plaintiff has not established any informational injury sufficient to confer standing.[2] *See Candelario*, 2016 U.S. Dist. LEXIS 163019, at *7-8 (rejecting plaintiff's theory of informational harm in the context of bare, procedural TCCWNA violations); *Hecht*, 2016 U.S. Dist. LEXIS 145589, at *9 (rejecting the plaintiff's claim that he suffered a concrete injury under the TCCWNA because he was "kept in the dark" regarding the applicability of certain provisions on a website. The court reasoned that "[p]laintiff does not allege that he even viewed either of these sections of Hertz's website."); *Hite*, 2017 U.S. Dist. LEXIS, at *20 (finding that because the plaintiff did not read, or generally agreed to, the terms on a website, "she lacks standing to contest the actual provisions of [those terms].").

---

[2] At the eleventh hour, Plaintiff submits a letter to the Court attempting to distinguish the facts of this case from *Hite*. *See* Letter dated March 28, 2017. For the reasons that I have already set forth in this Opinion, I do not find Plaintiff's arguments persuasive. Of note, Plaintiff attaches a generic printout from the Website that indicates that a consumer agrees to the Terms and Conditions of the Website when placing an order. But, nowhere in the Complaint does Plaintiff allege these facts, and Plaintiff may not amend the Complaint through a letter. *See Bell v. City of Phila.*, 275 Fed. Appx. 157, 160 (3d Cir. 2008) ("[a] plaintiff may not amend his complaint through arguments in his brief . . . ."). Even if the Court were to consider this printout, it is not sufficient to establish informational injury, because there are still no allegations that Plaintiff actually read the allegedly violative terms on the Website, relied on them, and felt the resultant effects. As such, this case is no different than *Hite*.

Finally, Plaintiff seems to suggest that language, *e.g.*, Terms and Conditions on the Website, that violates a statute is actionable, because its mere presence causes injury – regardless of whether she has seen it, read it, or suffered the effects of it. This is exactly the type of non-particularized and hypothetical injury against which *Spokeo* cautioned. The cases upon which Plaintiff relies for her proposition do not help her cause. Indeed, none of those cases support Plaintiff's position in this regard, because in those cases, the plaintiffs actually sought and were denied statutorily required information, or suffered injury because of unauthorized disclosure of private information. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)(finding that the plaintiff had standing to sue under the Fair Housing Act because he actively sought information regarding apartment rentals, and he was subjected to misrepresentations as a result); *Public Citizen v. Dep't of Justice*, 491 U.S. 440 (1989)(holding that plaintiff-advocacy organizations had standing to sue because they sought information allegedly subject to disclosure under the Federal Advisory Committee Act); *Federal Elec. Comm'n v. Akins*, 524 U.S. 11 (1998)(finding that a group of voters had standing when they challenged the Federal Election Committee's refusal to require the disclosure of information mandated by the Federal Election Campaign Act of 1971); *In re Nickelodeon*, 827 F.3d at 272 (finding that the plaintiffs had standing to bring suit under Video Privacy Protection Act when they suffered from an alleged unauthorized

disclosure of private information).[3]  Accordingly, I find that Plaintiff has failed to satisfy Article III standing.

Substantively, Defendant seeks to dismiss Plaintiff's Complaint based on statutory standing under the TCCWNA.  In that respect, the parties argue whether Plaintiff is an "aggrieved consumer" within the definition of the Act, which dispute raises substantially similar issues as those raised under Article III standing.  However, because Plaintiff lacks constitutional standing, which is a threshold question, I need not address Defendant's argument on statutory standing predicated upon New Jersey law.[4]  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

## CONCLUSION

The Court is aware that there are numerous class actions filed in this district based upon similar TCCWNA violations alleged in this case.  While the intent of the New Jersey legislature in enacting the TCCWNA is to provide additional protections for consumers in this state from unfair business practices,

---

[3]     I also do not find persuasive Plaintiff's reliance on the line of cases that have found standing when a plaintiff brought suit under the Federal Debt Collection Practices Act.  *See, e.g., Safdieh v. P & B Capital Grp.*, No. 14-3947, 2015 U.S. Dist. LEXIS 61680 (D.N.J. May 12, 2015); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. 12414 (11th Cir. Jul. 6, 2016).  Unlike this case, those decisions stand for the proposition that consumers have standing to sue when they are subjected to unfair debt collection practices from collectors.  Here, while Plaintiff has alleged that the Website violated certain provisions of the TCCWNA, she has not alleged that she, herself, was subjected to those violations.

[4]     I note that the definition of an "aggrieved consumer" has been the subject of multiple decisions issued by federal and state courts. Because the New Jersey Supreme Court has not weighed in on this issue, understandably, there are uncertainties with regards to how courts should apply this term.

the passage of the Act is not intended, however, for litigation-seeking plaintiffs and/or their counsel to troll the internet to find potential violations under the TCCWNA without any underlying harm.  In such instances, standing would be lacking.  For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**; Plaintiff's Complaint is dismissed without prejudice.


DATED: March 29, 2017                         /s/          Freda L. Wolfson
                                              Freda L. Wolfson
                                              United States District Judge